938 A.2d 1016

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Lawrence STATES, Appellee.**

**No. 44 WAP 2006.**

Supreme Court of Pennsylvania.

Argued March 6, 2007.

Resubmitted April 2, 2007.

Decided Dec. 27, 2007.

454

Francesco Lino Nepa, for the Com. of PA, appellant.

Thomas N. Farrell, Farrell & Kozlowski, Pittsburgh, for Lawrence States, appellee.

BEFORE: CAPPY, C.J., CASTILLE, SAYLOR, EAKIN, BAER, BALDWIN and FITZGERALD, JJ.

## OPINION

Justice FITZGERALD.

In this case, we consider principles of double jeopardy in the context of a simultaneous jury/bench trial for multiple criminal offenses. In a relatively unusual procedure, the jury was charged with rendering a verdict on some of the charges, while the trial judge had the task of deciding another. We must determine whether a mistrial on some charges due to a

hung jury, coupled with an acquittal in the bench trial, implicates double jeopardy protections such that a retrial cannot occur. We conclude that under the circumstances of this case, the prohibition against double jeopardy, specifically, the principle of collateral estoppel, operates to prevent the Commonwealth from proceeding with a retrial on those charges on which the jury could not agree.

On August 5, 2000, Lawrence States and two other men were in an automobile that was in a single vehicle accident on Bunola River Road in Forward Township, Allegheny County. States survived the crash, but the two other men died. The Commonwealth charged States with two counts each of Involuntary Manslaughter,[1] Accidents Involving Death or Personal Injury While Not Properly Licensed,[2] Homicide by Vehicle,[3] and Homicide by Vehicle While Driving Under the Influence of Alcohol.[4] States also faced three counts of Driving Under the Influence of Alcohol.[5] States filed a pretrial motion seeking dismissal of the Involuntary Manslaughter charges, which the trial court granted. States also sought severance of the Accidents Involving Death charges. He asserted potential jury prejudice based on the fact that he did not hold a valid driver's license. The trial court agreed and granted severance. Following the Commonwealth's invocation of its right to a jury trial, the trial court suggested a simultaneous jury/ bench trial, with the court determining guilt on the Accidents Involving Death charge, and the jury reaching a verdict on all other charges. The parties agreed to this procedure and the joint trial commenced on October 7, 2003.

On October 15, 2003, the jury informed the trial court that it was hopelessly deadlocked on all charges before it. The trial court declared a mistrial and dismissed the jury. On the same

1. 18 Pa.C.S. § 2501 and § 2504.
2. 75 Pa.C.S. § 3742.1
3. 75 Pa.C.S. § 3732.
4. 75 Pa.C.S. § 3735.
5. 75 Pa.C.S. § 3731(a)(1), (a)(3), and (a)(4).

date, the trial court rendered its verdict on the Accidents Involving Death charge. The court explicitly stated that it was not convinced beyond a reasonable doubt that States was the driver of the vehicle; as a result, it acquitted States of the single charge before it.

In light of the trial court's findings and verdict, States filed a motion to dismiss the remaining charges based on double jeopardy principles. According to States, the trial court's finding that the Commonwealth failed to prove he was the driver precluded further litigation on the issue. States argued that because each of the remaining charges required the jury to find he was the driver, the charges must be dismissed.

The trial court denied States' motion and, following an unsuccessful attempt at reconsideration, States filed an appeal with the Superior Court.[6] Upon review, the Superior Court concluded that because the trial court explicitly found that the Commonwealth failed to prove States was driving, collateral estoppel principles precluded the Commonwealth from attempting to prove States was the driver in any subsequent proceeding. The Superior Court reversed the trial court's order denying dismissal of the charges.

The Commonwealth filed a timely appeal and this Court granted allocatur in order to address the application of double jeopardy and collateral estoppel principles in the context of joint jury/bench trials. The issue is one of constitutional magnitude, a pure question of law. "Accordingly, our standard of review is de novo, and our scope of review is plenary." *Commonwealth v. White*, 589 Pa. 642, 910 A.2d 648, 652 n. 3 (2006) (citation omitted).

The proscription against twice placing an individual in jeopardy of life or limb is found in the Fifth Amendment to the United States Constitution, made applicable to the states

---

**6.** An appeal from an order denying a motion to dismiss on double jeopardy grounds is proper unless the trial court considers the motion and makes written findings that it is frivolous. *Commonwealth v. Brady*, 510 Pa. 336, 508 A.2d 286, 291 (1986). Here, the trial court concluded that the appeal in this case was not frivolous and the Superior Court agreed. The issue properly is before us.

through the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The double jeopardy protections afforded by our state constitution are coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense. *Commonwealth v. Fletcher,* 580 Pa. 403, 861 A.2d 898, 912 (2004). We have described double jeopardy rights as "freedom from the harassment of successive trials and the prohibition against double punishment." *Commonwealth v. Hude,* 492 Pa. 600, 425 A.2d 313, 318 (1980) (plurality). The specific basis for relief asserted here, collateral estoppel (also known as issue preclusion), is most familiar in the civil context, where its stated purpose is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." *Shaffer v. Smith,* 543 Pa. 526, 673 A.2d 872, 875 (1996).

However, collateral estoppel does not operate in the criminal context in the same manner in which it operates in the civil context. For instance, in civil practice the doctrine is applicable, in equal measure, to both parties, whereas in the criminal context, the use of the doctrine is considerably restricted, particularly where the Commonwealth seeks to use it against a criminal defendant. *See Commonwealth v. Holder,* 569 Pa. 474, 805 A.2d 499 (2002) (permitting the Commonwealth limited use of collateral estoppel principles to preclude relitigation of an evidentiary ruling that had been rendered in a previous probation hearing) (plurality). With respect to the criminal law defendant, collateral estoppel is treated as a subpart of double jeopardy protection and is defined as follows: "Collateral estoppel ... does not automatically bar subsequent prosecutions[,] but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." *Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246, 251 (1988) (citation omitted). As simple as this definition appears, the principle's application is not as straightforward as it is in the civil context because it must be

viewed through the lens of double jeopardy. *Commonwealth v. Brown*, 503 Pa. 514, 469 A.2d 1371, 1373 (1983) (it is "double jeopardy that forbids the state from offending the collateral estoppel rule").

"The efficiency concerns that drive the collateral estoppel policy on the civil side are not nearly as important in criminal cases because criminal cases involve a public interest in the accuracy and justice of criminal results that outweighs the economy concerns that undergird the estoppel doctrine." *Holder*, 805 A.2d at 508 (Saylor, J., concurring and dissenting) (citation omitted). Application of collateral estoppel principles to the criminal law was "intended to enhance the traditional double jeopardy protection and to provide relief from the growing threat of multiple prosecutions ... [it] is to be applied with 'realism and rationality' and not 'applied with the hypertechnical and archaic approach of a 19th century pleading book.'" *Hude*, 425 A.2d at 319 (citation omitted).

The facts set out in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1969), demonstrate the primary effect, and underlying purposes, of both double jeopardy protection and its narrower subpart, collateral estoppel. In *Ashe*, the government charged Bob Ashe with the gunpoint robbery of six men while they played poker in a friend's basement. The government's theory of the case was that Ashe committed the armed robbery with two or three other men. Ashe initially was tried for his part in the robbery of only one of the six victims. At trial, however, the identification evidence was weak and Ashe ultimately was acquitted due to insufficient evidence. Six weeks later, the government again tried Ashe for robbery, this time against a different victim. Once more, the government's evidence was weak, although there was some improvement in the witnesses' ability to identify Ashe. This time, the jury returned a verdict of guilty. Ashe challenged the conviction, and the fact of the second trial, on the basis of double jeopardy. The United States Supreme Court held that the second trial should not have taken place:

> The question is not whether Missouri could validly charge the petitioner with six separate offenses for the robbery of

the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial of robbing the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate the issue again.

... [T]he State ... treated the first trial as no more than a dry run for the second prosecution: "No doubt the prosecutor felt the state had a provable case on the first charge, and, when he lost, he did what every good attorney would do-he refined his presentation in light of the turn of events at the first trial." But this is precisely what the constitutional guarantee forbids.

*Id.* at 446–47, 90 S.Ct. 1189.

█ We have followed the rule in *Ashe* strictly in criminal cases, employing the federal three-part test to determine if collateral estoppel applies to limit further litigation on a particular issue. We engage in the following inquiries:

1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;

2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and

3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246, 251 (1988) (citing *Ashe*).

█ In the criminal law arena, the difficulty in applying collateral estoppel typically lies in deciding whether or to what extent an acquittal can be interpreted in a manner that affects future proceedings, that is, whether it "reflects a definitive finding respecting a material element of the prosecution's subsequent case." *Commonwealth v. Buffington,* 574 Pa. 29, 828 A.2d 1024, 1032 (2003). We ask whether the fact-finder, in

rendering an acquittal in a prior proceeding, "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Smith*, 540 A.2d at 251 (quoting *Hude*, 425 A.2d at 319–20). If the verdict must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. *See Commonwealth v. Zimmerman*, 498 Pa. 112, 445 A.2d 92, 96 (1981) (acquittal on simple assault precluded retrial on hung murder charges because simple assault was a constituent element of all grades of homicide in the case); *Commonwealth v. Wallace*, 411 Pa.Super. 576, 602 A.2d 345, 349–50 (1992) (Commonwealth's concession that the jury's acquittal meant appellant did not possess a gun collaterally estopped Commonwealth from any subsequent prosecution based on appellant's possession of a gun); *Commonwealth v. Klinger*, 264 Pa.Super. 21, 398 A.2d 1036, 1041 (1979) (appellant's acquittal on murder precluded the Commonwealth from bringing a subsequent perjury prosecution based on appellant's trial testimony that he did not kill the victim), *aff'd. sub nom. Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980). Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes. *See Buffington*, 828 A.2d at 1033 (acquittal of rape and IDSI did not establish that Commonwealth failed to prove an essential element of sexual assault); *Smith*, 540 A.2d at 253–54 (acquittal of gun possession charge did not collaterally estop Commonwealth from proceeding on charges of murder and possession of an instrument of crime, as acquittal could have been based on any number of reasons); *Commonwealth v. Harris*, 400 Pa.Super. 12, 582 A.2d 1319, 1323 (1990) (robbery acquittal did not preclude retrial on hung charge of aggravated assault), *appeal denied*, 528 Pa. 621, 597 A.2d 1151 (1991).

In the matter before us, there is no question that if collateral estoppel principles apply, the issue States seeks to foreclose

from further consideration-whether he was driving the car-was definitively determined in States' favor and formed the basis for the trial court's acquittal. The record is clear that the trial court based its verdict on its finding that the Commonwealth failed to prove beyond a reasonable doubt that States was the driver of the car. The court announced this fact in court. Thus, if States is entitled to double jeopardy protection under these circumstances, the Commonwealth would be collaterally estopped from attempting to prove that States was the driver of the car.[7]

In seeking permission to proceed with the retrial, the Commonwealth urges us to consider our decision in *Commonwealth v. McCane*, 517 Pa. 489, 539 A.2d 340 (1988). There, we were asked whether a jury's inability to reach a verdict on the charge of homicide by vehicle while driving under the influence, coupled with its guilty verdict on driving under the influence, operated to preclude the Commonwealth from retrying the defendant on the homicide by vehicle charge. Among other things, the defendant opposed retrial based on double jeopardy protections. We addressed the double jeopardy

7. In dissent, Justice Castille suggests we ignore the trial court's "gratuitous statement of the reason for [its] verdict of acquittal." While we do not agree, we note that even if the trial court had not stated explicitly on the record that the Commonwealth failed to prove States was the driver, we would conclude that its verdict alone, contrary to the dissent's assertion, would have provided "legal predicate" for States's claim. Relatively recently, this Court reaffirmed the rule of *Ashe*, namely, that "double jeopardy encompasses elements of issue preclusion (or collateral estoppel)." *Buffington*, 828 A.2d at 1032. We explained that under *Ashe*, a verdict that "reflects a definitive finding respecting a material element of the prosecution's subsequent case" forecloses consideration of that issue in a subsequent prosecution. *Id.* Thus, this Court explained in *Buffington* that the *Ashe* collateral estoppel rule applies whenever the verdict establishes or "necessarily implies" a factual finding in the defendant's favor. *Id.* at 1033. See also *Smith*, 540 A.2d at 251 (focusing its inquiry on whether the initial verdict could have been based on "an issue other than that which the defendant seeks to foreclose from consideration.") In this case, based on the record, we would conclude that the only issue for the trial court in deciding the charge of Accidents Involving Death While Not Properly Licensed was whether States was the driver of the vehicle in which two occupants were killed in this single vehicle accident. The fact that States had no license was not one he challenged.

question by noting the purpose underlying the constitutional protection:

The prohibition against double jeopardy protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.... [R]etrial of the appellee is not a successive prosecution, inasmuch as the charges of homicide by vehicle while driving under the influence, and driving under the influence were brought against the appellee in the same proceeding. Reprosecution of the appellee does not involve a second prosecution for the same offense after acquittal or a second prosecution for the offense after conviction.

. . .

In this case the jury was unable to agree on a verdict on the charge of homicide by vehicle while driving under the influence. The jury's failure to reach a verdict on this count is not an event that terminates jeopardy. Thus, double jeopardy considerations do not bar retrial of the.

*Id.* at 346 (citing *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). The Commonwealth characterizes the procedural posture of the instant case as a "classic hung jury situation," and likens it to *McCane.* The Commonwealth insists that "there is absolutely no basis for concluding that retrial of States should be classified as a subsequent prosecution." Commonwealth's Brief at 20. Nonetheless, the Commonwealth concedes that "this Court has stated that double jeopardy encompasses elements of collateral estoppel (*i.e.* issue preclusion), under which a verdict 'may, in certain circumstances, be viewed as a finding that forecloses consideration of an issue or fact in a subsequent prosecution.' " *Id.* (citing *Buffington*, 828 A.2d at 1032). The Commonwealth does not offer any suggestion on how to reconcile its two assertions. Of course, if a retrial that follows a hung jury does not implicate double jeopardy concerns in any manner, and collateral estoppel in the criminal context is part of double jeopardy protections, then the application of collateral estoppel principles to any criminal

retrial is improper. But such a conclusion would render the rationale of our decisions in *Buffington* and *Zimmerman* invalid, and does the same to the Superior Court's rationale in *Harris, Wallace,* and other cases. Each of those cases involved partially hung juries followed by retrials. In each, there existed the potential for application of collateral estoppel, and in some of them, the principle indeed was applied. Despite its reliance on *McCane,* the Commonwealth does not argue that these other cases were wrongly decided.

We observe a fundamental difference between the *McCane* case and those cases from this Court and the Superior Court that apply collateral estoppel: in *McCane* there was no acquittal at all. No fact finder reached any verdict in the defendant's favor. As a result, there could be no argument that the verdict was based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge and, further, there could be no argument that the Commonwealth should be precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way. Thus, *McCane* is not controlling as it did not involve an acquittal of some of the charges and, therefore, did not implicate principles of collateral estoppel. Nor is *McCane* appropriate as persuasive authority on the issue of whether to apply collateral estoppel principles following a partial acquittal. There are several cases in this Commonwealth that have applied collateral estoppel to retrials following a partially hung jury. Those cases remain good law. *See Buffington; Zimmerman; Harris; Wallace.*

Although we reaffirm the holdings of those cases today, we cannot conclude that they control the issue raised here. As with *McCane,* there exists a fundamental difference between those cases and the one before us. Here, two proceedings were jointly held before two separate fact finders. None of the cases applying collateral estoppel includes this procedural twist.[8] The Commonwealth argues that this difference is

8. The parties proceeded to a simultaneous jury/bench trial at the suggestion of the trial court following its grant of States' severance motion. States argues that his request for severance of the Accidents

significant, so much so that an entirely new approach is warranted.

The Superior Court has addressed the effect of joint jury/bench trials in a context slightly different from the one here. In *Commonwealth v. Wharton*, 406 Pa.Super. 430, 594 A.2d 696 (1991), the parties agreed to a joint jury/bench trial, with the jury to determine the charges of involuntary manslaughter, homicide by vehicle DUI, and DUI, while the court reached a verdict on various summary charges. The majority

Involving Death charge did not operate as a waiver of collateral estoppel and relies on the Superior Court's decision in *Commonwealth v. Wallace*, 411 Pa.Super. 576, 602 A.2d 345 (1992), for support. We observe that the *Wallace* case is materially different from this case. In *Wallace* the defendant was brought to trial on charges of attempted homicide and assault after the trial court granted the defendant's motion for severance of an additional weapons charge. Following an acquittal on the homicide and assault charges, the Commonwealth conceded that the jury's verdict definitively established that the defendant did not possess a gun, but nonetheless attempted to proceed to trial on the previously severed weapons charge. The Superior Court panel concluded that the defendant's request for severance did not prevent him from invoking collateral estoppel principles. Moreover, the *Wallace* court held, the Commonwealth's concession that the jury found the defendant did not possess a gun precluded the Commonwealth from attempting to relitigate the issue. While *Wallace* certainly stands for the proposition that a request for and grant of severance does not eliminate application of collateral estoppel, the case goes no further and makes no comment on whether or to what extent a joint jury/bench trial affects application of collateral estoppel. Because *Wallace* was not a joint jury/bench trial, it does not control the facts before us.

Nonetheless, we agree with the principle States asserts: his request for severance, which operated as a specific waiver of his right to have all charges brought against him in one proceeding, cannot be converted into a general waiver of all constitutional double jeopardy rights. Further, and perhaps more important, we do not see how States' agreement to a simultaneous jury/bench trial could be interpreted as a waiver of *all* double jeopardy protections. While the concession to a joint trial certainly may be viewed as an agreement to allow two different fact finders to reach independent (and perhaps contradictory) verdicts following a single proceeding, this case represents much more than that. In order to find for the Commonwealth here, we would have to determine that States' agreement to the joint trial included a knowing and voluntary appreciation of the fact that the jury may be unable to reach a verdict, and if so, the Commonwealth would have the right to present the evidence to a jury a second time, regardless of how the trial judge ruled and regardless of States' double jeopardy/collateral estoppel rights. We would not find waiver of such an important Constitutional right in such circumstances.

of evidence was presented in a joint trial, after which the jury acquitted the defendant of all charges before it. Twelve days later, the trial court heard supplemental evidence pertaining only to the summary charges and entered guilty verdicts. The defendant challenged the court's verdicts, claiming that the hearing on additional evidence constituted a second trial in violation of double jeopardy principles. The Superior Court panel held that jeopardy attached simultaneously on all offenses at the start of the joint trial and the twelve-day delay between the jury's verdict and the presentation of additional evidence that led to the trial court's verdict did not alter that fact. *Id.* at 698–99. The *Wharton* court relied on its prior decision in *Commonwealth v. Yachymiak,* 351 Pa.Super. 361, 505 A.2d 1024 (1986), wherein it held that "in a consolidated jury/nonjury trial, the trial court is not required to defer to the findings of the jury on common factual issues." *Wharton,* 594 A.2d at 699 (relying on *Yachymiak* ). While both *Wharton* and *Yachymiak* are relevant in that they involved simultaneous jury/bench trials, neither case involved a hung jury and a bench acquittal. The issue before us is one of first impression.

While we have not had occasion to consider this unusual trial procedure, it may not be as unusual as we think. In its petition seeking allowance of appeal, the Commonwealth asserted that guidance on the issue is necessary as this procedural scenario occurs repeatedly, often in the context of homicide or assault cases that include a "felon in possession" charge.[9] The latter charge usually is severed from the case due to potential jury prejudice associated with disclosure of the defendant's prior record. The jury is charged with resolving the homicide or assault charges, while the trial court simultaneously determines the felon in possession charge. Such a practice naturally produces the potential for inconsistent verdicts, which, the Commonwealth reminds us, do not pose a problem in this Commonwealth.

9. *See* 18 Pa.C.S. § 6105, Persons Not To Possess, Use, Manufacture, Control, Sell, or Transfer Firearms.

Although we have not spoken on the issue in terms of simultaneous jury/bench trials, the law is clear that inconsistent verdicts are permissible in Pennsylvania. *Commonwealth v. Strand*, 464 Pa. 544, 347 A.2d 675, 676 (1975). The Commonwealth draws our attention to other states that have considered simultaneous jury/bench trials and approved inconsistent verdicts that two fact finders reached. *See State v. Knight*, 266 Conn. 658, 835 A.2d 47 (2003) (fact that jury rendered not guilty verdict on some charges first did not preclude court from rendering guilty verdict on other charge immediately thereafter, as trial proceedings were simultaneous); *Copening v. U.S.*, 353 A.2d 305 (D.C.App.1976) (simultaneous jury/bench trial resulting in inconsistent verdicts from judge and jury did not offend collateral estoppel principles because proceedings did not constitute "prior adjudication"). The Commonwealth apparently seeks our adoption of the *Copening* rationale:

> Properly viewed, the issue before us is not the applicability of constitutional restrictions upon successive prosecutions, but rather whether the collateral estoppel principles enunciated in *Ashe v. Swenson* (and its progeny) should be extended to govern the procedurally unique situation in which several criminal charges against the same defendant have been allocated between two triers for concurrent adjudication upon virtually identical evidence. We conclude that they should not.
>
> . . .
>
> We do not understand *Ashe v. Swenson* . . . to mean . . . that one tried for two different but interrelated offenses at the same time must be convicted of both for conviction of either to stand.

*Copening*, 353 A.2d at 312–13. While the *Copening* court's rationale is logical, we observe that even if we were to adopt it in its entirety, it still would not control the circumstances of this case. *Copening* did not involve a hung jury and the prospect of a retrial. The issue there was merely whether the two fact finders could render their inconsistent verdicts, one after the other. In this way, the *Copening* court's approval of

"concurrent adjudication" differs little from the Superior Court's decisions in *Wharton* and *Yachymiak,* which, in the absence of any comment by this Court, constitute the current state of the law in this Commonwealth.

Without controlling or persuasive authority to support its position, the Commonwealth offers a final reason for claiming entitlement to retrial in this case, namely, its constitutional right to a jury trial. The Commonwealth argues that the peculiar procedural posture of this case should not operate to deny it that constitutional right. But the Commonwealth fails to address the dichotomy its argument presents, namely, that one constitutional right (the Commonwealth's right to a jury trial) should trump another constitutional right (the criminal defendant's right to be free from double jeopardy concerns). For the reasons set forth below, we conclude that in this case, the former must yield to the latter.

The Commonwealth's right to a jury trial stands on firm ground. The people, by referendum, made it part of our state constitution and this Court has affirmed its validity. *Commonwealth v. Tharp,* 562 Pa. 231, 754 A.2d 1251 (2000) (Article I, § 6, which affords Commonwealth same right to jury trial as accused, is constitutional). This Court has held that a defendant's effort to avoid a jury trial in a criminal case is impermissible in light of the state constitutional amendment. *White,* 910 A.2d at 662 (defendant's general plea to murder does not vitiate the Commonwealth's right to a jury trial at the degree of guilt hearing). Nonetheless, "the Commonwealth's right to a jury trial is a unique animal under the Pennsylvania Constitution and does not implicate federal constitutional rights." Id. at 670 (Cappy, C.J. dissenting). Surely, there would have been no need for a state constitutional amendment had the federal constitution supplied this same right. By contrast, double jeopardy protections have federal constitutional origins. Never have we held that this new right of the Commonwealth is on equal footing with, let alone higher ground than, a federal constitutional right of the magnitude and significance that the protection against double jeopardy represents. Nor could we so hold. We must remain faithful

to the minimum guarantees provided by the United States Constitution. *Commonwealth v. Swinehart,* 541 Pa. 500, 664 A.2d 957, 961 (1995). A state may grant more rights to its citizens than are provided in the United States Constitution, but not fewer. *Commonwealth v. Matos,* 543 Pa. 449, 672 A.2d 769, 774 (1996) ("The federal constitution provides a minimum of rights, below which the states cannot go.") (citing *Commonwealth v. Sell,* 504 Pa. 46, 470 A.2d 457, 467 (1983)).

The Commonwealth argues vigorously that if we affirm the Superior Court we have denied it its constitutional right to a jury trial. We cannot agree. The Commonwealth sought and received the right to proceed on this matter via a jury trial. At the same time, the Commonwealth agreed that the trial court would decide the single, severed charge simultaneously with the jury. The requested jury trial commenced, as did the bench trial. The Commonwealth presented its evidence to the jury. Unfortunately for the Commonwealth, it did not get the result it sought from the jury, nor did it get the result it sought from the bench. But it cannot be said that the Commonwealth was prohibited from presenting evidence to a jury. The plain fact is that it did.

The Commonwealth's agreement to proceed with a simultaneous jury/bench trial carried with it a risk, although one perhaps not foreseen by the Commonwealth. That risk was that the trial court would reach a verdict in States' favor and the jury would not reach a verdict at all. When this very scenario occurred, it left the proceedings in a most unusual posture: There existed a final order definitively establishing that *States was not the driver of the car* and a scheduled retrial at which the Commonwealth planned to offer evidence to establish that *States was the driver of the car.* The fact that a retrial required the Commonwealth to present evidence on this issue, to urge a second jury to reach a result contrary to the result previously reached by another fact finder, is what sets this case apart from *McCane* and converts it into a classic collateral estoppel matter.[10]

10. Justice Castille, in dissent, insists that McCane is on point and, further, "succinctly state[s] when double jeopardy applies." But

Consider what would occur if we were to permit a retrial to go forward. At the time the jury would be sworn, and prior to the presentation of any evidence, there would exist a "definitive finding respecting a material element of the prosecution's ... case" that was determined, in a final judgment, in the accused's favor. *Buffington*, 828 A.2d at 1032. The law is clear that States' double jeopardy rights preclude this because they "bar redetermination ... of [an] issue [that was] necessarily determined between the parties in a [prior] proceeding which has become a final judgment." *Smith*, 540 A.2d at 251. We hold that in light of the trial court's definitive finding that the Commonwealth failed to prove that States was the driver of the car, States' federal constitutional rights prohibit the Commonwealth from attempting to convince a second jury otherwise.

We are mindful of the Commonwealth's concern for future cases that utilize the simultaneous jury/bench trial procedure and we caution that our decision here does not address the general propriety of this procedure; we neither approve nor disapprove its use.[11] We observe, however, that the mere fact of a simultaneous jury/bench trial does not necessarily result in the circumstances we found troubling in this case. Indeed, it is the hung jury, the accompanying acquittal, and the attendant necessity of a retrial at which evidence must be

McCane cannot be interpreted as precluding the application of double jeopardy in this case because there was no acquittal in McCane and so there was no reason to address the mandate of *Ashe* in that case. It is the acquittal here that triggers the application of collateral estoppel, which, we have plainly stated, is encompassed within the protection against double jeopardy. *Buffington*, 828 A.2d at 1032. Further, the *Buffington* case, and other cases decided by this Court and the intermediate appellate court, establish that there need not be instances of "governmental overreaching" or "attempts by the Commonwealth to wear the defendant down with multiple trials" in order for collateral estoppel to apply. Neither *Buffington* nor the other cases discussed above involved such efforts. Rather, they involved a retrial following a partially hung jury. Nonetheless, this Court discussed and considered each case in light of the rule in *Ashe*. See *Buffington; Zimmerman; Harris; Wallace*. The "constitutional windfall" described by the dissent, regardless of whether deserved, is mandatory here.

11. Obviously, this case demonstrates the complications that can arise when such a procedure is utilized.

presented, that make this case different. The Commonwealth, in order to proceed on retrial, would have to present evidence on an issue that has already been decided in States' favor. The same would not be true in the case of a "garden variety" jury/bench trial at which two fact finders render their verdicts one after the other.

Based on the foregoing, we hold that the Commonwealth may not retry States on the charges upon which the jury could not agree, for to do so would permit relitigation of an issue already determined, by final judgment, in States' favor. As a result, we affirm the Order of the Superior Court, which reversed the Order of the Court of Common Pleas of Allegheny County.

Chief Justice CAPPY and Justice BALDWIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice CASTILLE files a dissenting opinion in which Justice BAER joins.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR concurring.

I join the majority opinion, except for its footnote 8, which addresses the argument that Appellee waived his constitutional double jeopardy protections by pursuing severance, a position ably developed by Mr. Justice Castille in his dissent. *See* Dissenting Opinion at at 476–81, 938 A.2d at 1031–33 (Castille, J.). On the one hand, the reasoning from *United States v. Blyden*, 930 F.2d 323 (3rd Cir.1991), cited by Justice Castille, strongly supports the Commonwealth's position. On the other hand, however, the Court of Appeals of Maryland has developed a contrary rationale, which focuses on the substantial difference between the preclusive effect of a guilty plea or conviction, at issue in the seminal line of United States

Supreme Court decisions,[1] and that of an acquittal, such as is at issue here. *See Wright v. State,* 307 Md. 552, 515 A.2d 1157, 1162–63, 1170 n. 5 (1986).

Ultimately, I agree with the Maryland court that the critical questions are whether the trial court's determination represented a resolution (correct or not) of some or all of the factual elements of the offenses subject to a potential retrial, and if so, whether such resolution would be inconsistent with a finding of guilt on the offenses subject to retrial. If, as here, both questions are answered in the affirmative, I also agree that the federal high Court's decisions should not be extended to convert a defendant's pursuit of severance into a blanket waiver encompassing the relevant dynamic of the constitutional interest in freedom from being placed twice in jeopardy.

Justice CASTILLE dissenting.

The essence of the Majority's decision in this case is that inconsistent verdicts implicate federal constitutional double jeopardy in a situation where a defendant is acquitted by a judicial factfinder in one part of an agreed-upon bifurcated trial, but a jury deadlocks in the other part, with the result that the defendant cannot be retried on the charges on which the jury merely deadlocked. Clearly, there was no governmental overreaching in this case and no attempt by the Commonwealth to wear the defendant down with multiple trials, which would support a finding of double jeopardy. In fact, the separate trials in this case were a product of appellee's own request and trial strategy. The Majority nevertheless awards the ultimate constitutional windfall. I disagree with the Majority's far-reaching conclusion, and therefore, I respectfully dissent.

The facts pertinent to the issue in this appeal are unique, but of course odd cases can make bad law. Appellee, who was the sole survivor of a single vehicle accident in which two other men perished, was charged with involuntary manslaugh-

1. *See Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) (holding that a guilty plea to certain charges did not bar trial as to related offenses, as the plea effectuated a waiver of double jeopardy interests); *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality) (holding that a conviction for a lesser included offense did not bar prosecution for the greater offense, where severance of the charges occurred upon the defendant's motion).

ter, homicide by vehicle, homicide by vehicle while driving under the influence of alcohol, accidents involving death or personal injury while not properly licensed and driving under the influence of alcohol. Appellee moved to sever the charge of accidents involving death or personal injury while not properly licensed from the other charges so that the jury would not learn that he did not have a valid driver's license. The trial court granted the motion.[1] Thus, it was appellee who demanded that he face not one, but two prosecutions. After invoking its right to a trial by jury, the Commonwealth agreed to a bifurcated trial with the accidents involving death or personal injury charge to be tried in a simultaneous bench trial along with the jury trial on the remaining charges. Appellee agreed to this bifurcated approach, which accommodated his severance request. Ultimately, the jury deadlocked on the charges of homicide by vehicle, homicide by vehicle as a result of driving under the influence of alcohol, and driving under the influence of alcohol. The trial court declared a mistrial and dismissed the jury, thus opening the way to retrial on those charges. On the less serious charge of accidents involving death or personal injury while not properly licensed, the trial court found appellee not guilty. Although it was not necessary to explain the basis for its decision to acquit, the trial court gratuitously offered that it felt that the Commonwealth had failed to prove beyond a reasonable doubt that appellee was the driver of the vehicle at the time of the accident.

Seeking to bootstrap on the resulting verdict from the severed proceedings he had demanded, appellee moved to dismiss the remaining charges, invoking double jeopardy. Appellee argued that the bench trial acquittal on the minor charge precluded retrial on the remaining charges because the trial court—which was not the factfinder on those charges—had expressly found that he was not driving the vehicle. Appellee contended that, because each of the other charges required him to be the driver, the trial court's statement and acquittal precluded a jury from returning a guilty verdict on

1. The trial court also dismissed the involuntary manslaughter charges.

any of the remaining charges. The trial court disagreed and denied the motion, concluding that, as a general principle, a retrial following a mistrial does not violate double jeopardy and that, when a case is bifurcated with separate trials by different factfinders, inconsistent verdicts based upon the same facts are permissible.[2] In my view, the trial court's analysis and conclusion are correct, and therefore, I would reverse the Superior Court's decision upsetting that judgment.

The Majority's general survey of the law pertaining to double jeopardy and collateral estoppel is thorough and well-presented, and therefore, it need not be repeated. I respectfully disagree, however, with the Majority's easy dismissal of this Court's decision in *Commonwealth v. McCane*, 517 Pa. 489, 539 A.2d 340 (1988). In my view, the reasoning employed in *McCane* is directly on point, as both cases involve the application of principles of double jeopardy to second prosecutions following a hung jury. In *McCane*, this Court succinctly stated when double jeopardy applies: "The prohibition against double jeopardy protects against a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *Id.* at 345–46 (citation omitted). The Majority correctly notes that the defendant in *McCane* had not been acquitted on any charges; instead, the jury was simply unable to reach a verdict as to the charges which the Commonwealth was seeking to retry. Likewise, in the case *sub judice*, the Commonwealth did not seek to retry appellee on the charge of accidents involving death or personal injury while not properly licensed, for which he was acquitted by a judicial factfinder, but rather only on the separate charges that resulted in a **jury** deadlock and a declaration of mistrial. Because this case does not involve a second prosecution for the same offense after acquittal, or a multiple conviction or

---

**2.** Although the court acquitted, it obviously did not find that the Commonwealth's evidence concerning who was driving was insufficient to present a jury question. In short, there is no claim here that appellee was entitled to acquittal on grounds of insufficient evidence. Instead, the question is the preclusive effect of one factfinder's decision upon a second factfinder hearing distinct criminal charges.

punishment for the same offense, pursuant to *McCane,* double jeopardy is not implicated.

The Majority invokes collateral estoppel principles as affording a basis for its decision, concluding that the trial court's unnecessary, record explanation of the reason for its verdict of acquittal precludes the Commonwealth from exercising its right to have a jury determine whether appellee was the driver in any retrial on the deadlocked charges. Application of the doctrine of collateral estoppel requires the adjudication of a specific issue with a resolution, in this instance, in favor of appellee. In its opinion addressing appellee's motion to dismiss, the trial court correctly noted that two separate factfinders may make inconsistent findings of fact and, as a result, reach inconsistent verdicts; if that were not so, the court noted, there would be little reason to sever charges or bifurcate trials. Trial Ct. Op. at 4. This settled point is even broader: the **same** factfinder constitutionally may render inconsistent verdicts.

I believe that the trial court's analysis is correct. "It has long been the rule in Pennsylvania and in the federal courts that consistency in a verdict in a criminal case is not necessary." *Commonwealth v. Strand,* 464 Pa. 544, 347 A.2d 675, 676 (1975) (citing *Commonwealth v. Parrotto,* 189 Pa.Super. 415, 150 A.2d 396 (1959); *United States v. Carbone,* 378 F.2d 420 (2nd Cir.1967); *United States v. Cindrich,* 241 F.2d 54 (3rd Cir.1957); *Mills v. Commonwealth,* 13 Pa. 633 (1850); *Commonwealth v. Kline,* 107 Pa.Super. 594, 164 A. 124 (1933)). Here, appellee sought severance of the charge of accidents involving death or personal injury while not properly licensed, a request that led to the bifurcation of the charges, and the existence of two separate factfinders. Appellee agreed to the bifurcation, a potential byproduct of which was inconsistent verdicts.

If the trial court and the jury had rendered verdicts simultaneously, it was entirely possible and permissible that the trial judge could acquit and that the jury could convict, or vice versa. In terms of constitutional principle, the trial level result here, as approved by the trial court, is materially

indistinguishable from the simultaneous, inconsistent verdict scenario. The trial judge rendered a verdict, but the jury was unable to do so; that jury deadlock was inconsistent with the trial judge's statement that he found unconvincing the Commonwealth's proof that appellee was the driver of the vehicle.

Another difficulty with the Majority's double jeopardy analysis is that it attaches constitutional consequences to a case-specific oddity—that the trial court stated the grounds for its acquittal—which is not a necessary part of a bench trial or a verdict in a bifurcation setting. A trial judge is not required to state the basis for an acquittal in a bench trial and, if the trial judge had not announced the basis for his decision here, appellee's claim would lack any legal predicate. Acquittals are returned, by bench trial judges and by juries, for a variety of reasons, some legally justifiable, and some less so. Among the latter are acquittals reflecting factfinder nullification of charges, misunderstanding of the law, mercy verdicts, or decisions resulting from bias or prejudice. Thus, the fact of an acquittal does not necessarily mean that either the defense proffered or the argument forwarded was credited. In most instances, the basis for and legitimacy of the acquittal cannot be second-guessed; the verdict is conclusive. In terms of its inherent legal effect, then, an acquittal does not act as a finding concerning any particular fact: indeed, a factfinder may believe that all elements of a crime were proven beyond a reasonable doubt, and yet acquit anyway. This reality is a factor which both the defendant and the Commonwealth weigh in determining whether to demand a jury or a judicial factfinder. Given this reality, a factfinder's gratuitous statement of the reasons for a verdict of acquittal should not operate as a substitute for what is the only ineluctable effect of the verdict. In my judgment, a federal double jeopardy bar should not depend upon such an arbitrary factor.

The Majority's analysis also affords insufficient consideration to the fact that appellee himself demanded the separate trials here. In *Ohio v. Johnson,* 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984), the United States Supreme Court held that a defendant who is himself responsible for the severance

of charges cannot then avail himself of the protections of double jeopardy based on collateral estoppel. There, the defendant, who was charged with murder, aggravated robbery, involuntary manslaughter and theft, pleaded guilty to involuntary manslaughter and theft. He then argued that prosecution of the remaining murder and aggravated robbery charges was barred by double jeopardy, as subsequent prosecutions following a conviction, because the charges to which he pleaded guilty were lesser included offenses of the remaining charges.

The Supreme Court rejected that argument, finding that the principles behind the double jeopardy protection were not implicated:

> We do not believe, however, that the principles of finality and prevention of prosecutorial overreaching applied in *Brown [v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)] reach this case. No interest of respondent protected by the Double Jeopardy Clause is implicated by continuing prosecution on the remaining charges brought in the indictment. Here respondent offered only to resolve part of the charges against him, while the State objected to disposing of any of the counts against respondent without a trial. Respondent has not been exposed to conviction on the charges to which he pleaded not guilty, nor has the State had the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial. The acceptance of a guilty plea to lesser included offenses while charges on the greater offenses remain pending, moreover, has none of the implications of an "implied acquittal" which results from a verdict convicting a defendant on lesser included offenses rendered by a jury charged to consider both greater and lesser included offenses. There simply has been none of the governmental overreaching that double jeopardy is supposed to prevent. On the other hand, ending prosecution now would deny the State its right to one full and fair opportunity to convict those who have violated its laws.

We think this is an even clearer case than *Jeffers v. United States,* 432 U.S. 137, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977), where we rejected a defendant's claim of double jeopardy based upon a guilty verdict in the first of two successive prosecutions, when the defendant had been responsible for insisting that there be separate rather than consolidated trials. Here respondent's efforts were directed to separate disposition of counts in the same indictment where no more than one trial of the offenses charged was ever contemplated. Notwithstanding the trial court's acceptance of respondent's guilty pleas, respondent should not be entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges.

*Id.* at 501–02, 104 S.Ct. at 2542 (citations omitted). The fact that this case does not involve a guilty plea or a guilty verdict is a distinction without a difference for purposes of the constitutional values at stake. A defendant should not be permitted to insist upon separate trials and then seek to avoid the fullness of those separate prosecutions, in an instance, like this one, where there simply is no prosecutorial overreaching.

Of similar effect is the Third Circuit's decision in *United States v. Blyden,* 964 F.2d 1375 (3rd Cir.1992). In *Blyden,* the defendants were charged with firearms violations under both federal and Virgin Islands law. On the first day of trial, the defendants sought and were granted severance of the federal and local charges, and trial proceeded only on the Virgin Island charges. After the jury returned not guilty verdicts, the defendants moved for dismissal of the federal charges, pleading double jeopardy and collateral estoppel. Citing the fact that the defendants themselves had sought the severance of the charges, the Third Circuit declined to dismiss the remaining charges:

A similar situation was presented in *United States v. Ashley Transfer Storage Co.,* 858 F.2d 221 (4th Cir.1988), where the defendants had persuaded the trial court to withdraw one of two counts from the jury's consideration. After the defendants were acquitted on the one count, the government sought a retrial, as to the count the judge had withdrawn

from the jury. The Court of Appeals remanded for retrial holding that where "the defendants' choice and not government oppression caused the successive prosecutions, the defendants may not assert collateral estoppel as a bar against the government any more than they may plead double jeopardy." *Id.* at 227. We find the reasoning of the *Ashley Transfer* opinion persuasive. . . .

*Id.* at 1379.

In my view, the controlling fact in the case *sub judice* is that appellee himself was responsible for the severance of the charges that resulted in two different factfinders hearing the evidence at trial. With the exception of the non-binding decision in *Commonwealth v. Wallace,* 411 Pa.Super. 576, 602 A.2d 345 (1992), none of the cases the Majority cites involve the severance of charges at the defendant's request or separate but simultaneous trials. *See Commonwealth v. Buffington,* 574 Pa. 29, 828 A.2d 1024 (2003) (single jury trial in which jury acquitted defendant of rape and involuntary deviate sexual intercourse but could not reach verdict on sexual assault; retrial permissible); *Commonwealth v. Zimmerman,* 498 Pa. 112, 445 A.2d 92 (1981) (jury acquittal in single proceeding on first-degree murder and simple assault deemed to preclude retrial of deadlocked charges of other grades of murder and aggravated assault); *Commonwealth v. Harris,* 400 Pa.Super. 12, 582 A.2d 1319 (1990) (in single trial where jury found defendant not guilty of robbery and simple assault but deadlocked on aggravated assault, retrial of aggravated assault charge not barred). *Wallace* involved severed charges but not simultaneous trials with separate factfinders and no retrial. Once a jury acquitted Wallace of attempted homicide and assault, the Commonwealth conceded that the jury found that Wallace did not possess a gun; and based solely upon that concession, the Superior Court found that Wallace could not be tried on the severed firearms charges. Thus, none of the cases the Majority relies upon control the issue presented here, much less do they command that we lose sight of the double jeopardy values that must guide our inquiry.

480

Because they are powered by the values which undergird the protection against double jeopardy, the decisions in *Johnson* and *Blyden* are relevant here. As a matter of constitutional principle, neither double jeopardy nor collateral estoppel precludes a full prosecution of a matter, based upon an acquittal in a separate prosecution, where the defendant is responsible for the severance of the charges that led to separate prosecutions before separate factfinders. In such an instance, there is no governmental overreaching. By contrast, in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1969), the defendant was charged in separate criminal complaints with robbing six poker players. After a jury acquitted him of robbing one of the victims based on insufficient identification evidence, the prosecutor sought to try him for the robbery of a second poker player. Clearly, concerns of governmental overreaching are implicated in that scenario. In this case, the Commonwealth intended to try all charges against appellee in a single trial, but appellee demanded and received a separation of the proceedings. This is governmental accommodation, not governmental oppression. The windfall the Majority accords appellee furthers no constitutional value; it does, however, operate to deprive the Commonwealth of its constitutional right to a trial by jury. *See* Pa. Const. Art. I, Sec. 6; *Commonwealth v. White*, 589 Pa. 642, 910 A.2d 648 (2006). In this regard, the result here is perverse.[3]

**3.** Respectfully, I am not persuaded by the Maryland case, *Wright v. State*, 307 Md. 552, 515 A.2d 1157 (1986), preferred by Mr. Justice Saylor in concurrence. Again, there is no governmental overreaching here; it is governmental accommodation, in a circumstance arising from appellee's own split-trial demand. If the implicit complaint is that the logically resulting waiver should not be chargeable to appellee because he was unaware of that possible effect, his quarrel is a collateral one with his lawyer. I know of no authority that requires an explicit waiver of all contingent effects in such circumstances. Frankly, it *is* unlikely in the extreme that a defendant in appellee's circumstances at the time he made the motion, even if explicitly informed, would have insisted upon the single trial where the jury would have heard the harmful truth he was trying to keep from it. And so, I repeat, the windfall here serves no legitimate constitutional value; it lets a criminal defendant's pretend complaint turn a constitutional shield into a perverse sword.

Finally, it is worth noting that the windfall awarded appellee will not likely be shared by many others. In light of today's decision, the Commonwealth should vigorously resist severance requests in similar cases, and let the jury hear the whole truth about the defendant and the full array of the crimes charged. If that fails, the Commonwealth should insist that the bench trial verdict be rendered after the jury verdict or, failing that, should insist upon an explicit waiver of what will come to be known as the defendant's *"Commonwealth v. States* right," *i.e.,* the right to double jeopardy relief where no double jeopardy value is implicated.

I respectfully dissent.

Justice BAER joins this dissenting opinion.

Justice EAKIN dissenting.

I join Mr. Justice Castille's dissenting opinion. The trial court had one duty—determine whether the evidence warranted a verdict of guilty or not guilty on the Accidents Involving Death charge. The court was not empowered to bind the jury by finding specific facts. This case does not come to this Court in the posture of evaluating the evidence that may support a finding of guilt on the other charges, which were before the jury—there is no conviction against which to test that sufficiency. The question here is collateral estoppel.

There were 13 fact-finders here. As to one count, the trial court was the fact-finder—as to the other counts, the 12-person jury was the fact-finder. While the 12 jurors were unable to reach a unanimous verdict, we do not know on what issues that inability was based. It may be that all 12 found appellee was the driver, but disagreed on other elements of the charges. To foist upon these 12 the findings of the one fact-finder *not* involved in those charges is inappropriate.

The majority notes collateral estoppel, in the criminal context, "bar[s] redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding. . . . " Majority Op., at 458, 938 A.2d at 1020 (quoting *Commonwealth v. Smith,* 518 Pa. 15, 540 A.2d 246, 251

(1988) (citation omitted)). The trial court here did not "necessarily determine" driving was not proved—it found appellee not guilty, then went beyond its obligation and stated the reasons for its determination. *See* Trial Court Opinion, 7/15/04, at 3 ("[T]his [c]ourt admitted at the hearing on the motion to dismiss that the reason for its verdict of not guilty was that there was insufficient evidence to prove beyond a reasonable doubt ... [appellee] had been driving the vehicle at the time of the accident." (citation omitted)).

Simply put, the "finding" that driving was not proved is not something found in a criminal verdict. Had the jury found appellee guilty, and been hung on other charges, would the matter of driving be "necessarily determined?" Yes, for it necessarily was proved beyond a reasonable doubt, witness the convictions. At a retrial for the unresolved charges, would proof of driving be necessary? One must assume it would, for it is an element of the crime, and the determination of one fact-finder should not bind another.

If the court wished to direct a verdict on the other counts, for want of proof of driving, it could have done so, but that is not the question before us. The question is collateral estoppel—there is no practice equivalent to civil practice in a criminal prosecution. Here, the specific findings in the verdict slip are limited to one ultimate question: "guilty" or "not guilty." In a criminal verdict, there simply are no "necessary determinations" made that estop anything.

Based on the foregoing, I would affirm the trial court's order denying appellee's pre-trial motion to dismiss the charges against him on double jeopardy grounds.