J-A26003-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WILFREDO RODRIGUEZ-CLAUDIO, | |
| Appellee | No. 394 MDA 2014 |

Appeal from the Order Entered January 29, 2014
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0000920-2012

BEFORE:  BOWES, MUNDY, and JENKINS, JJ.

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 23, 2014**

The Commonwealth appeals from the January 29, 2014 order dismissing a charge pending against Appellee Wilfredo Rodriguez-Claudio on the basis of the collateral estoppel aspect of the prohibition against double jeopardy.  As we conclude that the trial court incorrectly applied the doctrine in question, we reverse and remand.

The present matter concerns a shooting that occurred on January 20, 2012 on the 300 block of Pear Street, Reading; two people were killed and another was shot.  The three victims belonged to one extended family that had an acrimonious relationship with Appellee's extended family.  On the day in question, male members in the victims' family were on the front porch of one of their homes when Juan Claudio, Appellee's co-defendant, started making gestures at them.

One of the men on the porch, Giovanie Collazo-Rosa, walked toward Juan Claudio and demanded that Juan Claudio approach him. As a confrontation appeared to be imminent, Juan's sister, Rosa, telephoned a man identified only as Manny and asked Manny to come over and take care of the situation. Shortly thereafter, a red car arrived on the scene, Manny exited it, and he began to shoot at members of the victims' family. Juan Claudio also was witnessed shooting at the victims with a gun. Giovanie Collazo-Rosa was shot with a gun and killed. Enrique Collazo was injured by gunshot pellets. Enrique's uncle, Efrain Lopez-Collazo, was shot with a gun and killed.

In an oral[1] statement, Appellee told police that, when Manny arrived and started to shoot at the victims, Appellee went into a house. Appellee continued that he retrieved a shotgun located on the second floor and opened a window. Appellee then said that, when he opened the window, he saw his sister "running for her life" and fired the shotgun once. N.T. Jury Trial, 9/30/13 - 10/2/13, at 281. After the shooting was over, Appellee left the vicinity with Juan Claudio.

_____

[1] While the Commonwealth contends that Appellee made a written statement, Commonwealth's brief at 7, the record indicates the contrary. Michael Perkins, a criminal investigator for the Reading Police Department, took Appellee's statement. He reported that there was no written statement from Appellee. N.T. Jury Trial, 9/30/13 to 10/2/13, at 285 ("[T]here was no written statement."). There also was no audio or visual recording of the statement. *Id*. Investigator Perkins recited the information that Appellee gave to police based upon his notes of an interview.

Appellee was charged with two counts each of first-degree murder and third-degree murder, attempted murder, six counts of aggravated assault, three counts of reckless endangerment, possession of an instrument of crime ("PIC"), six counts of conspiracy, and one violation of the Uniform Firearms Act ("VUFA") (persons not to possess). Trial on the VUFA charge was severed from the remaining charges, which were submitted to a jury.

After the Commonwealth rested, the trial court granted Appellee's request for judgment of acquittal as to two counts of first-degree murder, two counts of third-degree murder, three counts of aggravated assault, and the conspiracy counts related to those offenses. On October 2, 2013, the jury acquitted Appellee of all the remaining charges. On October 7, 2013, Appellee filed a motion to quash the pending VUFA charge based upon the double jeopardy principle of collateral estoppel. The trial court granted that motion. It concluded that the jury necessarily found that Appellee did not possess a weapon when it acquitted him of PIC.

This Commonwealth appeal followed. The Commonwealth asks, "Did the trial court err in granting the motion to quash the severed firearm charge under a theory of collateral estoppel because [Appellee] was acquitted of possessing an instrument of crime." Commonwealth's brief at 4. Collateral estoppel as a component of the Constitutional protection against double jeopardy was analyzed in our Supreme Court's decision in *Commonwealth v. States*, 938 A.2d 1016 (Pa. 2007). Therein, our High

Court noted that application of the doctrine of collateral estoppel is a question of law, that the standard of review is *de novo*, and that the scope of review is plenary. The double jeopardy clause is found in both the United States and Pennsylvania Constitutions, and those clauses are coextensive. *Id*. Double jeopardy prohibits successive prosecutions and multiple punishments for the same crime. *Id*. Thus, double jeopardy rights are defined as, "freedom from the harassment of successive trials and the prohibition against double punishment." *Id*. at 1019 (citation omitted).

Collateral estoppel is derived from the double jeopardy protection against being tried twice for the same offense. However, collateral estoppel does not, itself, bar a second prosecution; rather, it prohibits "redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." *Id*. at 1020 (citation omitted). The application of this doctrine in the criminal context differs from the civil concept of collateral estoppel. *Id*. In the criminal setting, collateral estoppel is "intended to enhance the traditional double jeopardy protection and to provide relief from the growing threat of multiple prosecutions." *Id.* It is applied "with realism and rationality and not applied with the hyper-technical and archaic approach of a 19th century pleading book." *Id.*

A three-part test derived from *Ashe v. Swenson*, 397 U.S. 436 (1970), is utilized in applying collateral estoppel in the criminal context:

      1) an identification of the issues in the two actions for the purpose of determining whether the issues are sufficiently similar and sufficiently material in both actions to justify invoking the doctrine;

      2) an examination of the record of the prior case to decide whether the issue was "litigated" in the first case; and

      3) an examination of the record of the prior proceeding to ascertain whether the issue was necessarily decided in the first case.

*States*, *supra* at 1021 (quoting *Commonwealth v. Smith*, 540 A.2d 246, 251 (Pa. 1988)).

The critical inquiry is to what extent an acquittal "can be interpreted in a manner that affects future proceedings, that is, whether it reflects a definitive finding respecting a material element of the prosecution's subsequent case." *States*, *supra* at 1021 (quotation marks and citation omitted). Thus, we focus on whether the factfinder in the previous trial "could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id*. (quotation marks and citation omitted). It is only when "the verdict **must** have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge" that the Commonwealth cannot attempt "to relitigate that issue in an effort to resolve it in a contrary way." *Id*. (emphasis added). "Conversely, where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes." *Id*.

To resolve the question of whether an issue has been decided by a factfinder, we must examine the entire record in a practical manner. **Ashe**, **supra**. We review the offenses, the evidence, the jury instruction and any other relevant circumstances to reach the conclusion as to whether a "rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." **Id**. at 444.

For example, in **States**, the defendant was charged with various offenses in connection with a traffic accident. Two occupants of a car died in a single vehicle accident while the defendant survived the crash. Some offenses were submitted to the jury for its consideration while, at the same trial, the trial court was tasked with rendering the verdict on a charge of accidents involving death while not properly licensed. Trial revolved around the question of whether the defendant or another occupant of the car was the driver. The jury hung on the charges submitted to it, and then the trial court rendered its finding. The trial court expressly concluded that the evidence was insufficient to establish beyond a reasonable doubt that the defendant was driving the car, and it acquitted him.

The question on appeal was whether the Commonwealth could proceed to retry the defendant on the deadlocked charges. Our Supreme Court held that, since the critical finding in the trial court's verdict was that the Commonwealth failed to prove that the defendant was driving the car, the defendant could not be re-prosecuted before a jury on the remaining

charges stemming from the traffic accident. In so doing, it analyzed the evidence and concluded that the trial court's verdict necessarily involved a finding that the Commonwealth failed to establish beyond a reasonable doubt that defendant was driving the car.

Similarly, in **Ashe**, **supra**, the United States Supreme Court applied the doctrine so as to preclude a second prosecution. Ashe was charged in six separate criminal proceedings with robbing six men with a gun while they were playing poker together. Two or three other men were involved in perpetrating the crime. The state prosecuted Ashe for one of those robberies, but the identification evidence was very weak in that none of the victims was able to positively identify Ashe as a perpetrator. Ashe was acquitted. The Supreme Court ruled that Ashe could not be prosecuted for the remaining five robberies since, given the nature of the proof, the first verdict necessarily involved the determination that the prosecution failed to establish beyond a reasonable doubt that Ashe was one of the perpetrators of the armed robbery.

Herein, the trial court concluded that the jury's verdict in connection with PIC reflected a definitive finding that Appellee did not possess a weapon. We respectfully disagree with this conclusion. In connection with the assault offenses submitted to the jury for consideration, Appellee proffered a justification defense. This defense was supported by the contents of Appellee's oral statement to police. Specifically, Appellee said he

obtained a shotgun and he fired in defense of his sister, who was fleeing imminent harm. The jury received a charge on justification. N.T. Trial, 9/30/13-10/2/13, at 351.

The elements of PIC are two-fold. The defendant commits that offense if he "possesses any instrument of a crime with the intent to employ it criminally." 18 Pa.C.S. § 907. In light of the evidence submitted at trial, the jury verdict could have been premised upon one of two facts: the Commonwealth's failure to prove that Appellee possesses the shotgun, **or** its failure to establish that Appellee intended to employ the shotgun that he did possess criminally.

The Commonwealth presented evidence that Appellee told police that he fired a shotgun once to protect his sister. The jury was instructed on the justification defense. Given all of the facts and circumstances and charge herein, the jury's verdict could have been premised upon a finding that Appellee acted justifiably when he fired his shotgun at assailants pursuing his sister. It is clear that this verdict did not necessarily entail a finding by the jury that Appellee did not possess a weapon. The verdict in this case could have been based upon an issue other than the one that Appellee seeks to foreclose from consideration. *See Commonwealth v. Barger*, 956 A.2d

458 (Pa.Super. 2008). Thus, the Commonwealth can try Appellee for the VUFA offense[2] at issue.

Appellee cites our decision in **Commonwealth v. Wallace**, 602 A.2d 345 (Pa.Super. 1992), in support of the trial court's ruling herein. Wallace was charged with attempted homicide, assault, possession of an unlicensed weapon, and possession of a weapon by a prohibited person. The latter two weapons charges were severed for a bench trial while a jury trial was held on the remaining two crimes. At the jury trial, the two complainants alleged that Wallace brandished and discharged a weapon at them during a road-rage incident. Wallace's version of events was at odds with those of the two purported victims, and, at trial, he specifically denied that he ever had a gun in his possession. The jury acquitted Wallace of attempted homicide and assault. Following the verdict, the Commonwealth conceded on the record that the jury's verdict necessarily reflected a finding that the defendant did not possess a weapon.

The primary issue in **Wallace** was whether the defendant waived his right to invoke collateral estoppel since he sought severance of the weapons charges from the homicide and assault offenses. We rejected the waiver

---

[2] The statute in question states that a person who has a conviction for an enumerated offense may not "possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S. § 6105. Appellee admittedly was convicted of one of the delineated offenses.

argument. We then summarily concluded that the Commonwealth's admission that the jury did find that the defendant did not possess a gun precluded it from attempting to re-litigate the question of whether Wallace did so. The Commonwealth in this matter made no similar concession. Hence, we reject Appellee's attempt to invoke **Wallace**.

Order reversed. Case remanded. Jurisdiction relinquished.

Judge Jenkins joins the Memorandum.

Judge Mundy files a Concurring Statement in which Judge Bowes and Judge Jenkins join.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/2014