J-A09013-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
GREGORY JORDAN :
:
Appellant : No. 1596 WDA 2018

Appeal from the Judgment of Sentence Entered October 10, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0012031-2018

BEFORE: SHOGAN, J., MURRAY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY SHOGAN, J.: FILED AUGUST 3, 2020

Appellant, Gregory Jordan, appeals from the judgment of sentence

entered following his conviction of person not to possess firearms.[1] After

careful review, we affirm.

The trial court set forth the procedural history of this case, and related

matters, as follows:

By way of background, [Appellant] originally was charged at
CC No. 2017-1702 with [the following crimes in relation to an
incident that occurred with Tishana Nowlin on January 16, 2017]:
Criminal Attempt - Homicide (18 Pa.C.S.A. §901) (Count 1);
Robbery (18 Pa.C.S.A. §3701) (Count 2); Aggravated Assault (18
Pa.C.S.A. §2702) (Count 3); Criminal Conspiracy (18 Pa.C.S.A.
§903) (Count 4); Person Not to Possess a Firearm (18 Pa.C.S.A.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105.

§6105) (Count 5); Carrying a Firearm Without a License (18 Pa.C.S.A. §6106) (Count 6); Terroristic Threats (18 Pa.C.S.A. §2706) (Count 7); Theft by Unlawful Taking (18 Pa.C.S.A. §3921) (Count 8) and Disorderly Conduct (18 Pa.C.S.A. §5503) (Count 9). The Person Not to Possess charge subsequently was severed and charged in the information filed at CC No. 2018-12031.[2]

[Regarding an incident that occurred with Tim Harris on January 3, 2017, Appellant] was charged at a separate information at CC No. 2017-1887 with Robbery (18 Pa.C.S.A. §3701) (Count 1); Person Not to Possess a Firearm (18 Pa.C.S.A. §6105) (Count 2); Carrying a Firearm without a License (18 Pa.C.S.A. §6106) (Count 3); Criminal Trespass (18 Pa.C.S.A. §3503) (Count 4); Simple Assault (18 Pa.C.S.A. §2701) (Count 5); Recklessly Endangering Another Person (18 Pa C.S.A. §2705) (Count 6); and Criminal Conspiracy (18 Pa.C.S.A. § 903) (Count 7). The Person Not to Possess charge subsequently was severed and charged in the information filed at CC No. 2018-12032.

Prior to the commencement of trial, the Commonwealth nolle prossed the charge of Theft by Unlawful Taking at CC No. 2017-1702, as well as the charges of Criminal Trespass and Recklessly Endangering Another Person at CC No. 2017-1887.

On October 1, 2018, [Appellant] proceeded to a simultaneous jury and bench trial ("joint trial"). It was the understanding of this court and the parties that the jury would hear the remaining charges at CC Nos. 2017-1702 and 2017-1887, while this court simultaneously sat as the fact-finder with respect to the summary disorderly conduct offense at CC No. 2017-1702, and the severed firearm charges at CC Nos. 2018-12031 and 2018-12032. (See Verdict Transcript ("VT"), taken 10/4/18, p. 11); (Sentencing Transcript ("ST"), held 10/10/18, pp. 2-11).

At the conclusion of the joint trial, the jury found [Appellant] not guilty of Robbery, Conspiracy, and Terroristic Threats at CC No. 2017-1702, and not guilty of Robbery, Simple Assault, and Conspiracy at CC No. 2017-1887. (VT, pp. 2-3).[1] Although this court had reached its own verdict at the same time as the jury,

_____

[2] The conviction on the severed firearm charge at CC No. 2018-12031 is the subject of this appeal.

- 2 -

the court, out of an abundance of caution, wanted an opportunity to conduct legal research and confirm its belief that it was free to render its own factual findings, even if those findings were inconsistent with the jury's verdict. (ST, p. 11). Having determined that it was not bound by the jury's verdict, this court officially rendered its verdict on October 10, 2018. The court found [Appellant] guilty of disorderly conduct at CC No. 2017-1702 and guilty of the severed firearm charge at CC No. 2018-12031. (ST, pp. 11-12).[2] The court acquitted [Appellant] of the severed firearm charge at CC No. 2018-12032. (ST, p. 11).

> [1] During the charging conference, the Commonwealth withdrew the charges of Attempted Homicide and Aggravated Assault at CC No. 2017-1702. (Trial Transcript ("TT"), 10/1/18-10/3/18, pp. 251-[2]52). This court then granted [Appellant's] motion for a judgment of acquittal as to the charges of Carrying a Firearm without a License at CC Nos. 2017-1702 and 2017-1887. (TT, pp. 256-[2]57).
>
> [2] Evidence of [Appellant's] certified record making him a person not to possess was introduced outside of the jury's presence, right before closing arguments. (TT, pp. 328-[3]29); (Commonwealth's Exhibits 9, 10, and 11).

[Appellant] opted to proceed immediately to sentencing. (ST, p. 12). [Appellant] was sentenced to a period of 11-and-[one]-half to 23 months of imprisonment in the Allegheny County Jail, with credit for time served. (ST, pp. 16-17). This sentence resulted in [Appellant] being paroled forthwith. (ST, p. 18). A three (3) year term of probation was imposed, but the court explicitly promised [Appellant] that it would terminate the last year of its probation upon a showing of good behavior during the first two (2) years of his probationary period. (ST, p. 17).

A timely post-sentence motion was filed at CC No. 2017-1702. The motion was heard and denied on November 1, 2018. This timely appeal followed.

Trial Court Opinion, 5/16/19, at 1-4. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

In addition, the trial court summarized the relevant factual background of the incident pertaining to this appeal as follows:

During the early evening hours of January 16, 2017, Tishana Nowlin was robbed at gunpoint by two (2) men on St. Joseph Street in the Mt. Oliver neighborhood while she was on her way home from work. (Trial Transcript ("M"), held 10/1/18 - 10/3/18, pp. 145-[1]46, 149-[1]50, 169-[1]70, 181). One of the men started checking her pockets while the other man - whom Ms. Nowlin later identified as [Appellant], pulled out what she described as an "extremely big gun," pointed it directly at her, and said, you "know what it is." (TT, pp. 150-[1]51, 160-163, 168, 170, 185). [Appellant] took Ms. Nowlin's keys and wallet, and he also patted down her pockets to check if she had any other valuables in her possession. (TT, pp. 151, 155). Ms. Nowlin began yelling and saying "oh, my God, I can't believe they just robbed me." (TT, pp. 151, 155). [Appellant] and his companion took off running down St. Joseph Street. (TT, pp. 151, 156-[1]57).

Ms. Nowlin told a woman nearby to call the police because she had just been robbed. (TT, p. 151). Ms. Nowlin also called the police and tried to run after the men. (TT, pp. 151, 156, 158, 164-[1]65 198). As she was chasing them, [Appellant] turned around and said something to Ms. Nowlin, but she could not recall the substance of what he said. (TT, pp. 156-[1]57). Ms. Nowlin saw the men enter a brown house next to a bus stop on St. Joseph Street. (TT, pp. 151, 155-[1]57, 159, 164, 177).

Ms. Nowlin recounted the details of the robbery to the police upon their arrival. (TT, pp. 159-[1]60, 166, 199). Ms. Nowlin was "frantic" and "screaming" when officers arrived. (TT, pp. 198-[1]99). She started crying after she explained what had happened. (TT, p. 199). Believing that the robbers were still inside of the brown house, officers spent a considerable amount of time attempting to lure the men out of the home before they realized that no one was present inside. (TT, pp. 160, 166-[1]67, 200-[2]06). Ms. Nowlin was presented with a photographic array of suspects the day after the incident. (TT, pp. 161-[1]63, 181-[1]82, 225-[2]28, 231-[2]33, 236). After looking at several photographs, she positively identified [Appellant] as her robber, without hesitation. (Id.) She had never seen [Appellant] before the robbery. (TT, p. 163).

Trial Court Opinion, 5/16/19, at 5-7.

Appellant presents the following issue for our review:

I. In light of the pleadings, the charges, the evidence, the parties' theories and defenses, the Commonwealth's nolle prossing the charge of Theft by Unlawful Taking and withdrawing the charges of Criminal Attempt-Criminal Homicide and Aggravated Assault, the trial court's granting judgment of acquittal on two charges of Firearms Not to be Carried Without a License, and the jury's verdict acquitting [Appellant] of Robbery, Criminal Conspiracy-Robbery, and Terroristic Threats, whether double jeopardy and collateral estoppel barred the trial court from convicting [Appellant], in a consolidated jury/bench trial, of Persons Not to Possess Firearms stemming from the same incident?

Appellant's Brief at 5.

Appellant argues that the trial court violated his constitutional right against double jeopardy when it convicted him of persons not to possess a firearm. Appellant's Brief at 30-49. Appellant contends that because the jury acquitted him of multiple crimes connected to the incident, the trial court violated principles of double jeopardy and collateral estoppel in returning a verdict of guilt. Id. at 31-32. Essentially, Appellant asserts that the trial court, sitting as the fact finder with regard to the crime of person not to possess a firearm, was bound by the jury's acquittal on other charges, which Appellant presumes is a binding determination as to the credibility of the Commonwealth's witnesses. Id. at 42-43. Further, Appellant contends that current precedent that permits inconsistent verdicts in combined bench/jury trials is not binding on this case, and he urges reconsideration of such precedent. Id. at 45-48.

Appellant's issue invokes the protections afforded by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution as well as Article I, Section 10 of the Pennsylvania Constitution.[3] As such, our scope and standard of review are as follows:

> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is de novo.

Commonwealth v. Vargas, 947 A.2d 777, 780 (Pa. Super. 2008) (citations omitted).

In Commonwealth v. States, 938 A.2d 1016 (Pa. 2007), our Supreme Court explained the concepts of double jeopardy and collateral estoppel in the criminal context as follows:

> The proscription against twice placing an individual in jeopardy of life or limb is found in the Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment. Benton v. Maryland, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed 2d 707 (1969). The double jeopardy protections afforded by our state constitution are coextensive with those federal in origin; essentially, both prohibit successive prosecutions and multiple punishments for the same offense. Commonwealth v. Fletcher, 580 Pa. 403, 861 A.2d 898, 912 (Pa. 2004). We have described double jeopardy rights as "freedom from the harassment of successive trials and the prohibition against double punishment." Commonwealth v. Hude, 492 Pa. 600, 425 A.2d 313, 318 (Pa. 1980) (plurality). [C]ollateral estoppel (also known as issue preclusion), is most familiar in the civil context, where its stated purpose is to "relieve

_____

[3] The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 states in relevant part, "No person shall, for the same offense, be twice put in jeopardy of life or limb[.]"

parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, [and] encourage reliance on adjudication." Shaffer v. Smith, 543 Pa. 526, 673 A.2d 872, 875 (Pa. 1996). However, collateral estoppel does not operate in the criminal context in the same manner in which it operates in the civil context. For instance, in civil practice the doctrine is applicable, in equal measure, to both parties, whereas in the criminal context, the use of the doctrine is considerably restricted, particularly where the Commonwealth seeks to use it against a criminal defendant. See Commonwealth v. Holder, 569 Pa. 474, 805 A.2d 499 (Pa. 2002) (permitting the Commonwealth limited use of collateral estoppel principles to preclude relitigation of an evidentiary ruling that had been rendered in a previous probation hearing) (plurality). With respect to the criminal law defendant, collateral estoppel is treated as a subpart of double jeopardy protection and is defined as follows: "Collateral estoppel … does not automatically bar subsequent prosecutions[,] but does bar redetermination in a second prosecution of those issues necessarily determined between the parties in a first proceeding which has become a final judgment." Commonwealth v. Smith, 518 Pa. 15, 540 A.2d 246, 251 (Pa. 1988) (citation omitted). As simple as this definition appears, the principle's application is not as straightforward as it is in the civil context because it must be viewed through the lens of double jeopardy. Commonwealth v. Brown, 503 Pa. 514, 469 A.2d 1371, 1373 (Pa. 1983) (it is "double jeopardy that forbids the state from offending the collateral estoppel rule").

States, 938 A.2d at 1019-1020.

Pennsylvania courts consistently have respected the authority of a jury to find, or to decline to find, the existence of each element of each criminal offense. Likewise, a trial judge, sitting simultaneously as fact-finder with a jury in a bifurcated trial, is entitled to make his or her own credibility findings, and it is well settled that inconsistent verdicts are permissible in Pennsylvania. States, 938 A.2d at 1025. In Commonwealth v. Moore, 103 A.3d 1240 (Pa. 2014), our High Court reiterated that "Federal and Pennsylvania courts

alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt." Id. at 1246.

This case involved an inconsistent verdict. Such verdicts, "while often perplexing, are not considered mistakes and do not constitute a basis for reversal." Commonwealth v. Petteway, 847 A.2d 713, 718 (Pa. Super. 2004) (citations omitted). In prior decisions addressing the issue of inconsistent respective verdicts of the jury and the trial court, this Court held that inconsistent verdicts are permissible in Pennsylvania. Commonwealth v. Wharton, 594 A.2d 696, 699 (Pa. Super. 1991); Commonwealth v. Yachymiak, 505 A.2d 1024, 1026 (Pa. Super. 1986). "We reasoned that: an acquittal cannot be interpreted as a specific finding in relation to some of the evidence presented; an acquittal may represent the jury's exercise of its historic power of lenity; and a contrary rule would abrogate the criminal procedural rules that empower a judge to determine all questions of law and fact as to summary offenses." Wharton, 594 A.2d at 698-699; Yachymiak, 505 A.2d at 1026-1027. When a judge and jury act as separate fact finders in a consolidated jury/nonjury trial, "the trial court is not required to defer to the findings of the jury on common factual issues." States, 938 A.2d at 1024 (quoting Wharton, 594 A.2d at 699). Moreover, as this Court recognized in Yachymiak, it is difficult, if not impossible, to determine when two verdicts

are truly inconsistent.  Yachymiak, 505 A.2d at 1026.  Our Supreme Court explained that "the Superior Court's decisions in Wharton and Yachymiak, which, in the absence of any comment by this Court, constitute the current state of the law in this Commonwealth."  States, 938 A.2d at 1025.

Here, the trial court offered the following analysis regarding Appellant's claim of error:

> Against this backdrop, it is respectfully submitted that this court was not bound by the jury's factual findings in the simultaneous joint trial.  This court was acting as an independent fact-finder with respect to the two (2) charges that were being tried simultaneously with the offenses that were tried before the jury.  In discharging its fact-finding duty, the court was not just permitted, but rather was required, to make its own credibility determinations and factual findings based on its own assessment of the evidence.  Moreover, the determinations made by the jury and this court were based on evidence that was presented during the same prosecution.  Indeed, evidence of [Appellant's] certified record making him a person not to possess was introduced before closing arguments, albeit outside of the jury's presence.  (TT, pp. 328-29); (Commonwealth's Exhibits 9, 10, and 11).  As noted, the verdicts by the jury and this court were reached at the same time. The only reason that this court did not formally render its verdict at the same time as the jury was so that it could research the very issue raised in this appeal.  (Sentencing Transcript, 10/10/18, p. 11).  Thus, for all the reasons just stated, [Appellant's] contention is without merit.

Trial Court Opinion, 5/16/19, at 11-12.  We agree.

Where, as here, a simultaneous jury/bench trial is conducted and the defendant is not subjected to a subsequent trial following an acquittal, the trial court is not bound by the jury's credibility determinations and may make findings different from and inconsistent with the jury's findings.  Wharton, 594 A.2d at 699; Yachymiak, 505 A.2d at 1027.  Compare States, 938 A.2d

at 1021-1027 (where summary offense acquittal necessarily decided issue, subsequent jury trial on charges inconsistent with that acquittal was barred). Indeed, it is undisputed that a single jury/bench trial occurred in this matter. Thus, the jury's verdicts of acquittal on the various offenses related to the incident involving Tishana Nowlin on January 16, 2017, have no bearing on the findings of the trial court leading to the conviction on the offense of person not to possess a firearm. Even assuming, for the sake of argument, that we were to deem the trial court's verdict inconsistent with the jury's verdict, we would conclude that a trial court is permitted to render an inconsistent verdict. Hence, Appellant's claim lacks merit.

Moreover, to the extent Appellant would have us ignore the holdings in Wharton and Yachymiak, we observe that we must follow the decisional law established by our own Court. Commonwealth v. Santiago, 980 A.2d 659, 666 n.6 (Pa. Super. 2009). Unless Wharton and Yachymiak are overturned by an en banc panel of this Court, or by a decision of the Pennsylvania Supreme Court, they continue to be viable precedent for this Court and for the courts of common pleas. Id. See also Sorber v. American Motorists Ins. Co., 680 A.2d 881, 882 (Pa. Super. 1996) (holding that, even though petition for allowance of appeal was pending before the Pennsylvania Supreme Court, decision remains binding precedent as long as the decision has not been overturned by our Supreme Court).

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  8/3/2020