J-S41032-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LISA MARIE KRUSKIE, | : | |
| | : | |
| Appellant | : | No. 1961 MDA 2019 |

Appeal from the Judgment of Sentence Entered November 14, 2019
in the Court of Common Pleas of Snyder County
Criminal Division at No(s): CP-55-CR-0000283-2018

BEFORE:    KUNSELMAN, J., McLAUGHLIN, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:           **FILED:  JANUARY 21, 2021**

Lisa Marie Kruskie (Appellant) appeals from her November 14, 2019 judgment of sentence for indirect criminal contempt (ICC), based upon her violation of a temporary order pursuant to the Protection From Abuse (PFA) Act, 23 Pa.C.S. §§ 6101-6122.  We affirm.

By way of background, the Commonwealth charged Appellant with terroristic threats, harassment, and ICC. The charges stemmed from a May 26, 2018 incident between Appellant and her ex-husband, Robert Kruskie, Jr.[1] At the time of the incident, a temporary PFA order entered on April 4, 2018, was in effect. That order stemmed from a PFA petition filed by Kruskie

---

[1] The parties have been divorced since 2011. They share the same last name, but references to Kruskie in this memorandum refer to Appellant's ex-husband.

*Retired Senior Judge assigned to the Superior Court.

against Appellant.[2] Appellant had been personally served with the temporary order on April 4, 2018, and, by her own admission at trial, she was aware of the order's prohibitions at the time of the incident. N.T., 10/23/2019, at 7, 35, 68.

At the simultaneous jury/bench trial, the following evidence was introduced.[3] On May 6, 2018, around six p.m., Kruskie was grocery shopping at a Weis Markets grocery store. Kruskie was checking out at a self-checkout kiosk when he heard Appellant speak to him from the self-checkout kiosk immediately to his right. He recognized her voice, and then saw she was standing approximately an "arm's length away." *Id.* at 47. He was surprised to see her there, and until that point, he did not know she was in the store. According to Kruskie, Appellant then made a series of statements to him, such as, "life as [you] know it is over and you're done, this is it for you, tonight's the night, you're finished." *Id.* The statements made Kruskie feel "worried" and "concerned." *Id.* Appellant initially looked at Kruskie while making the statements, and then looked away while she continued to speak.

---

[2] Kruskie eventually obtained a final PFA order after a hearing, but the final order is not the subject of the ICC charge.

[3] A "simultaneous jury/bench trial" is one where the evidence is presented simultaneously, and the jury renders a verdict on some charges and the trial court renders a verdict on others. *Commonwealth v. States*, 938 A.2d 1016, 1017 (Pa. 2007). Although the record does not specify, presumably the trial proceeded in this manner because the PFA Act does not provide a right to a jury trial for a charge of ICC. *See* 23 Pa.C.S. § 6114(b)(3) ("The defendant shall not have a right to a jury trial on a charge of ICC.").

Kruskie only had a few items, so he scanned them and got "out of there." *Id.* at 48. He left the store as quickly as he could and went to his parked van. Appellant came outside and walked towards where Kruskie was parked. *Id.* at 52. Kruskie drove away quickly to avoid further contact. *Id.* at 53. The entire encounter lasted "just a few minutes." *Id.* at 56. Kruskie interpreted Appellant's statements as threats. *Id.* at 55. He reported the statements to the police and signed a criminal complaint that same day.

Officer Francis Petrovich from the Selinsgrove Borough Police Department attempted to interview Appellant on the same night as the incident. Officer Petrovich could see Appellant through the window of her home, but Appellant did not respond to the officer's loud knocking at her door. *Id.* at 42-43.

As part of the police investigation, Officer Petrovich viewed the non-audio surveillance video from Weis Markets. At trial, the Commonwealth introduced still images from the video. Officer Petrovich and Kruskie identified the woman in the photographs as Appellant. Officer Petrovich testified that the photographs depicted Appellant at the self-checkout kiosk number two at the same time Kruskie was at self-checkout kiosk number three, directly in front of Appellant. *Id.* at 34. At the time of the incident, one other self-checkout kiosk was available, and the store also had staffed checkout lanes. *Id.* at 39, 42.

Appellant testified in her own defense. She acknowledged that the temporary PFA in effect at the time of the incident stated that she "shall not abuse, harass, stalk, or threaten … Kruskie, in any place that [he] might be found" and she "shall not contact [Kruskie] … by telephone or by any other means." *Id.* at 68. She admitted to being at the store and using the self-checkout lane approximately two feet away from Kruskie. *Id.* at 65. According to Appellant, she saw Kruskie at the self-checkout "[o]nce she started that way and into the kiosk." *Id.* at 68-69. Nevertheless, she proceeded to use the self-checkout kiosk next to him. *Id.* at 73. Appellant denied making the statements or speaking to Kruskie at all, and accused Kruskie of lying because he is "very vindictive." *Id.* at 65.

At the end of trial, the jury found Appellant not guilty of terroristic threats and harassment. The trial court found Appellant guilty of ICC. The case proceeded to a sentencing hearing for the ICC conviction on November 14, 2019. Prior to sentencing, Appellant orally moved to acquit based on the weight of the evidence, arguing that the jury's verdict reflected a finding that Appellant did not communicate with Kruskie in a threatening manner. The trial court denied the motion. N.T., 11/14/2019, at 2-3. The trial court then sentenced Appellant to 60 days to 6 months of incarceration. Appellant then orally moved for appeal bail, which the trial court denied. *Id.* at 6-7.

Appellant timely filed a notice of appeal.[4] On appeal, she raises two issues: (1) "[w]hether the trial court erred when it found [Appellant] guilty of [ICC] after the jury found [Appellant] not guilty on all [other] counts at trial" and (2) "[w]hether the trial court erred when it denied [Appellant's] request for appeal bail." Appellant's Brief at 11.

In examining Appellant's first issue, we bear the following in mind. ICC is a charge asserting that a violation of an order of court occurred outside the presence of the court. **Commonwealth v. Padilla**, 885 A.2d 994 (Pa. Super. 2005). The PFA Act permits a court to hold an individual subject to a protection order in contempt of such order and to punish the individual in accordance with the law. 23 Pa.C.S. § 6114(a). "When reviewing a contempt conviction ... we are confined to a determination of whether the facts support the trial court decision. We will reverse a trial court's determination only when there has been a plain abuse of discretion." **Commonwealth v. Wilson**, 227 A.3d 928, 932-33 (Pa. Super. 2020) (citation and brackets omitted).

Appellant's entire argument on her first issue is premised upon the jury's not-guilty verdicts for the accompanying terroristic threats and harassment charges. Appellant posits that if believed, the statements alleged by Kruskie would be sufficient to establish the crimes of terroristic

---

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

threats and harassment. Appellant's Brief at 13. According to Appellant, the jury's acquittal on the terroristic threats and harassment charges reflected the jury's determination that the Commonwealth did not prove beyond a reasonable doubt that Appellant made the statements in the manner testified to by Kruskie. *Id.* at 15. Ergo, because the Commonwealth did not prove Appellant made threatening or harassing statements, the trial court erred or abused its discretion when it relied upon the same statements to find Appellant guilty of ICC. *Id.* at 14-15.

Because Appellant cites only to the test for the sufficiency of the evidence to prove an ICC charge, we will analyze her argument as such. *See* Appellant's Brief at 14.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Brumbaugh***, 932 A.2d 108, 109-10 (Pa. Super. 2007).

This Court recently explained the elements required for a finding of ICC.

> Where a PFA order is involved, an ICC charge is designed to seek punishment for violation of the protective order…. To establish ICC, the Commonwealth must prove: 1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; 2) the contemnor had notice of the order; 3) the act constituting the violation must have been volitional; and 4) the contemnor must have acted with wrongful intent.

***Wilson***, 227 A.3d at 932-33 (citing ***Brumbaugh***, 932 A.2d at 110). Wrongful intent "can be imputed by virtue of the substantial certainty that one's actions would place one in contact with the PFA petitioner in violation of the PFA [o]rder." ***Id.*** at 932-33 (citation omitted).

In the instant case, Appellant was aware that the temporary PFA order prohibited all contact with Kruskie.[5] While simply encountering the subject of

---

[5] Appellant does not direct our attention to where in the record the temporary PFA order might be found, and we did not discover the PFA order during our own review of the record. The trial court incorporated the records from the PFA matter into the record, but it was not transmitted to this Court as part of the certified record. It is Appellant's responsibility to ensure that all necessary documents are transmitted to this Court. ***Commonwealth v. Wyatt***, 203 A.3d 1115, 1117 n.2 (Pa. Super. 2019).

The trial court stated in its Rule 1925(a) opinion that the temporary PFA order prohibited Appellant from having "any contact" with Kruskie. Trial Court Opinion, 3/20/2020, at 2. Because Appellant acknowledged the prohibitions of the PFA order during her testimony and does not dispute the trial court's finding on appeal that the PFA order prohibited all contact, the

*(Footnote Continued Next Page)*

a PFA order in a public grocery store is not enough to demonstrate wrongful intent, Appellant, by her own admission, saw Kruskie but proceeded to use the self-checkout kiosk only an arm's length away from him. Kruskie testified that Appellant looked directly at him and spoke to him in a threatening manner. The trial court did not abuse its discretion by concluding these actions were sufficient to constitute ICC.

The crux of Appellant's argument is that the jury and the trial court's verdicts are inconsistent. However, inconsistency between a jury and trial court's verdicts on charges based on the same evidence presented at trial "is not an adequate basis for granting relief." *Commonwealth v. Wharton*, 504 A.2d 696, 699 (Pa. Super. 1991); *see also Commonwealth v. Yachymiak*, 505 A.2d 1024, 1026 (Pa. Super. 1986) (affirming judgment of sentence following trial court verdict that was inconsistent with a jury trial verdict in a consolidated jury/bench trial). "The law is clear that inconsistent verdicts are permissible in Pennsylvania." *States*, 938 A.2d at 1025.[6] Inconsistent verdicts are permissible because a jury's acquittal typically

_(Footnote Continued)_ ───────────

absence of the PFA order from the certified record has not impacted our appellate review.

[6] Although our Supreme Court has "not spoken on the issue in terms of simultaneous jury/bench trials," it has recognized that the Superior Court's "decisions in *Wharton* and *Yachymiak*, … in the absence of any comment by [the Pennsylvania Supreme] Court, constitute the current state of the law in this Commonwealth." *States*, 938 A.2d at 1025.

"cannot be interpreted as a specific finding in relation to some of the evidence." **Commonwealth v. Moore**, 103 A.3d 1240, 1250 (Pa. 2014) (citing **Commonwealth v. Carter**, 282 A.2d 375, 376 (Pa. 1971) (internal quotation marks omitted)).[7]

Appellant's argument is based upon an improper assumption that the jury's verdict meant it rejected Kruskie's testimony. However, a jury verdict of acquittal may result from an exercise of lenity, or a compromise or mistake by the jury. **Moore**, 103 A.3d at 1250. Moreover, as the sole factfinder on the ICC charge, the trial court was entitled to credit Kruskie's trial testimony regarding Appellant's statements to him, even if the jury did not. **See Wharton**, 504 A.2d at 699 ("[I]n a consolidated jury/nonjury trial, the trial court is not required to defer to the findings of the jury on common factual issues.").

Based on the foregoing, we discern no abuse of discretion in the trial court's determination that the evidence was sufficient to prove Appellant committed ICC.

---

[7] **Cf. Commonwealth v. Rankin**, 235 A.3d 373 (Pa. Super. 2020) (concluding that notwithstanding the lack of specific factual findings by the jury, for the purpose of double jeopardy and collateral estoppel, the evidence and arguments at trial were such that a rational jury could have only acquitted based on the same element relied upon by the trial court when determining Appellant's guilt under summary offenses). Because Appellant does not make this argument or develop a claim regarding double jeopardy or collateral estoppel, we need not consider the applicability of **Rankin** further.

We turn now to Appellant's second argument, in which she avers that the trial court erred by denying her request for bail pending appeal.[8] Appellant's argument is sparse and her analysis of the law is meager. She merely cites to Pa.R.Crim.P. 521(B)(1), which is the rule regarding bail after a sentence of less than two years' imprisonment[9] and states that her bail was revoked in September 2019, without any explanation as to why it was revoked or why reinstatement of bail was warranted on appeal after it had been revoked.[10] Appellant's Brief at 15-16. She posits in a one-sentence argument devoid of analysis that the trial court erred by denying her request for bail pending appeal because "a meritorious issue existed on appeal" and she would remain incarcerated on other charges in unrelated cases. *Id.*

---

[8] Technically, to invoke our jurisdiction to review an order pertaining to bail, Appellant should have filed a petition for review pursuant to Chapter 15 of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 1762(b)(2). However, a notice of appeal seeking review of such an order will be treated as a petition for review, thereby allowing this Court to exercise appellate jurisdiction. *See Commonwealth v. Parsons*, 166 A.3d 1242, 1245 (Pa. Super. 2017).

[9] That subsection of the rule provides, "[w]hen the sentence imposed includes imprisonment of less than 2 years, the defendant shall have the same right to bail as before verdict, unless the judge, pursuant to paragraph (D), modifies the bail order." Pa.R.Crim.P. 521(B)(1).

[10] Exacerbating matters is Appellant's failure to comply with the requirements of Pa.R.A.P. 2117, a rule that details the required components of a statement of the case. Appellant's statement of the case lacks citations to the record and a "closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy." Pa.R.A.P. 2117(a).

Furthermore, she does not point to the place in the record where she made the request for bail, in contravention of our Rules of Appellate Procedure. *See* Pa.R.A.P. 2119(e) (requiring appellants to specify place in the record where a claim was preserved before the trial court). Accordingly, we find her claim regarding the denial of bail to be waived due to the lack of a developed argument in her brief and her failure to provide necessary context for her claim.[11]

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

---

[11] Even if we did not find it to be waived, her argument does not convince us that the trial court abused its discretion in denying her request for bail. Although Appellant failed to comply with Pa.R.A.P. 2119(e), we observe that she made a request for bail pending appeal during the sentencing hearing. *See* N.T., 11/14/2019, at 8-9. The trial court denied such request with an explanation of several reasons, which included the nature of the ICC violation; the testimony from a child welfare caseworker regarding Appellant's conduct towards the caseworker at a grocery store during a prior hearing for bail revocation; an unspecified prior conviction; and a March 4, 2019 psychological evaluation indicating that Appellant's engagement in violent and/or threatening behavior was unlikely to change. *Id.*; *see also* Pa.R.Crim.P. 521(c) ("Whenever bail is refused or revoked under this rule, the judge shall state on the record the reasons for this decision."). Appellant did not oppose the statement of reasons at the hearing and she makes no attempt to argue against the reasons here. Accordingly, she has failed to convince us that the trial court abused its discretion in denying her request for bail pending appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/21/2021