J-S24020-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANIEL WALTER OAKS, II | : | |
| | : | |
| Appellant | : | No. 1325 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 13, 2022
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000153-2019

BEFORE: BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:        **FILED: August 6, 2025**

      Daniel Walter Oaks, II ("Oaks") appeals from the judgment of sentence imposed after a jury, following a second trial, found him guilty of involuntary manslaughter, homicide by vehicle, and aggravated assault by vehicle.[1] Oaks contends an expert for the Commonwealth testified beyond the fair scope of his expert report at the first trial; the Commonwealth failed to present sufficient evidence to support his convictions on the aforementioned offenses at the first and second trials; and he was entitled to dismissal of the aforementioned offenses prior to the second trial based on double jeopardy/collateral estoppel principles. We conclude: (1) the record does not support Oaks's fair scope claim; (2) Oaks's challenge to the sufficiency of the evidence at the first trial is either not cognizable or waived for the purpose of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 2504(a); 75 Pa.C.S.A. §§ 3732(a), 3732.1(a).

this appeal; (3) the Commonwealth was not collaterally estopped from pursuing retrial of the aforementioned offenses; (4) the evidence at the second trial was sufficient to prove causation; and (5) the evidence at the second trial was sufficient to prove serious bodily injury. Thus, for the reasons that follow, we affirm.

Oaks's convictions arise from a 2018 motor vehicle crash during which Oaks had been driving his Subaru WRX. Alyssa Hawk ("Hawk") was in the front passenger seat. Oaks turned left out of the parking lot of the Y Bar and Grille, which was located on the inside of a bend in State Route 346, a two-lane roadway with several homes close to the edge of the road. Oaks rapidly accelerated, crossed a bridge, and entered a straight portion of the roadway. The posted speed limit was thirty-five miles per hour. Oaks reached speeds at least double the speed limit when his vehicle spun out of control. Oaks's vehicle continued to spin as it travelled over 200 feet, across the opposite lane of travel of Route 346 and toward a pickup truck parked in front of the home of Sam Pearce. The passenger's side of Oaks's vehicle struck the rear passenger's side of the pickup truck. That initial impact crushed the passenger's side of Oaks's vehicle and killed Hawk.

The force of the initial impact also rotated and pushed the pickup truck through the front porch of the home. Sam Pearce, Cody Pearce (Sam Pearce's brother) and Justin McDivitt ("McDivitt"), who had heard Oaks's vehicle accelerate out of the Y Bar and Grille, were by the front porch of the home when the mass of vehicles struck the porch and threw them thirty to sixty feet

away from where they had been standing. Oaks's vehicle, which had continued to spin after the initial impact with the pickup truck, struck the pickup truck a second time before coming to rest with the front corner of the driver's side of Oaks's vehicle in contact with the front corner of the passenger's side of the pickup truck. Oaks, Sam Pearce, Cody Pearce, and McDivitt were flown by helicopter to hospitals. Leslie Meyers ("Meyers"), who had been seated in a "side-by-side" all-terrain vehicle parked by the pickup truck, did not suffer physical injury.

Pennsylvania State Police Corporal David Kostok ("Corporal Kostok") investigated the crash. In his initial investigative report, Corporal Kostok estimated Oaks's speed was eighty-eight miles per hour, and his vehicle yawed, *i.e.*, rotated sidewise around its center of mass. Corporal Kostok noted there were no adverse weather or road conditions contributing to the crash and there was no evidence that Oaks's vehicle suffered a mechanical failure. Corporal Kostok's initial investigative report focused on excessive speed as the cause of the accident.

The Commonwealth charged Oaks with involuntary manslaughter and homicide by vehicle for the death of Hawk, as well as three counts of aggravated assault by vehicle (as to Cody Pearce, Sam Pearce, and McDivitt) and five counts of recklessly endangering another person ("REAP")[2] (with respect to Hawk, Cody Pearce, Sam Pearce, McDivitt, and Meyers).

---

[2] *See* 18 Pa.C.S.A. § 2705.

Additionally, the Commonwealth charged Oaks with numerous traffic offenses, including obedience to traffic control devices, driving at safe speed, and reckless driving.[3]

Oaks submitted an expert report by Marcus Mazza, P.E. ("Mazza"), who asserted that Oaks's vehicle suffered a mechanical failure, namely, a broken ball joint in the left front wheel of his vehicle, before the crash. Corporal Kostok and Mazza prepared supplemental reports in response to each other's reports. In a supplemental report in January 2019, Corporal Kostok expressly stated that "[t]he only way a vehicle gets into a critical speed yaw is through the application of an inappropriate steering input." General Investigative Report, 1/7/19, at 7.

At a trial in 2021 ("the first trial"),[4] a jury found Oaks guilty of five counts of REAP, but deadlocked on homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter ("the remaining charges"). *See* N.T., First Trial, Vol. 9, at 5. The trial court separately found Oaks guilty of almost all of the summary traffic offenses, including reckless driving and driving at safe speed, but acquitted Oaks of obedience to traffic control

_____

[3] *See* 75 Pa.C.S.A. §§ 3111, 3361, 3736.

[4] At the close of the Commonwealth's case at the first trial, the trial court denied Oaks's motion for judgment of acquittal asserting that the evidence of a "left steering input" was too speculative. *See* N.T. First Trial, Vol. 4, at 879-85.

device.[5] The court declared a mistrial as to the remaining charges and deferred scheduling a sentencing hearing to await the Commonwealth's decision to retry Oaks on the remaining charges. *See id*. at 7.

The Commonwealth elected to retry Oaks on the remaining charges, and, prior to the retrial, Oaks filed a motion to dismiss the remaining charges on double jeopardy and collateral estoppel grounds. The trial court denied the motion after a hearing.[6]

The retrial on the remaining charges commenced in August 2022 ("the second trial"), and a jury found Oaks guilty of homicide by vehicle and involuntary manslaughter, and three counts of aggravated assault by vehicle (as to Sam Pearce, Cody Pearce, and McDivitt, respectively). The trial court thereafter sentenced Oaks to an aggregate term of nineteen to fifty-six months of imprisonment.[7] Oaks timely appealed.

_____

[5] At the first trial, the trial court acquitted Oaks of violating 75 Pa.C.S.A. § 3111 (obedience to traffic control devices). The trial court later explained that it has determined the evidence did not show a uniformed officer placed or was holding a traffic control device. *See* Trial Court Opinion, 2/22/24, at 20.

[6] The record does not contain the transcript of the hearing on Oaks's double jeopardy and collateral estoppel claims.

[7] Although the trial court sentenced Oaks on October 13, 2022, the original sentencing order contained a typographical error stating that the aggregate maximum sentence was thirty-six months. After Oaks appealed the judgment of sentence, the trial court subsequently corrected the October 2022 sentencing order to reflect the proper aggregate maximum sentence was fifty-six months. Because the error in the original sentencing order was clearly typographical in nature, the trial court had the authority to correct the order

*(Footnote Continued Next Page)*

Oaks raises the following issues for our review:

1. Whether the trial court erred in denying the defense's motion for a mistrial during the [first] trial based on Corporal Kostok's conclusory testimony that [Oaks] had steered to the left, without first testifying to as much as part of his investigation or placing such conclusion in his report?

2. Whether the trial court erred in denying the defense's motion to dismiss (or for judgment of acquittal) as to . . . homicide by vehicle[,] . . . aggravated assault by vehicle[,] . . . and involuntary manslaughter . . . charges at the close of the Commonwealth's direct case in the [first] trial?

3. Whether the trial court erred in denying the defense's motion to dismiss homicide by vehicle[,] . . . aggravated assault by vehicle[,] . . . and . . . involuntary manslaughter charges at the close of the first trial but prior to the second trial based on notions of double jeopardy and collateral estoppel?

4. Whether, in the [the second] trial, there existed insufficient evidence to support a finding, beyond a reasonable doubt, of the necessary element of direct causation of [Hawk's] death as to . . . homicide by vehicle and . . . involuntary manslaughter, respectively?

5. Whether, in the [second] trial, there existed insufficient evidence to support a finding, beyond a reasonable doubt, that Cody Pearce, Sam Pearce, and . . . McDivitt suffered "serious bodily injury" . . . a necessary element of . . . aggravated assault by motor vehicle, . . . respectively?

Oaks's Brief at 5-6.

Oaks's first issue challenges the trial court's ruling to deny a motion for

mistrial at his **first trial**.[8]  Specifically, Oaks asserts that the trial court should

_____

during the pendency of this appeal. **See Commonwealth v. Lawrence**, 291 A.3d 912, 914 (Pa. Super. 2023).

[8] We have found little authority discussing evidentiary errors at a first trial when the defendant was retried at a second trial.  However, because Oaks *(Footnote Continued Next Page)*

have granted a mistrial when Corporal Kostok testified there was a left steering input before Oaks's vehicle yawed and spun off the road. Oaks claims that this testimony exceeded the fair scope of Corporal Kostok's initial investigative report and that he lacked proper notice of the corporal's intended testimony about a left steering input before the first trial. **See** Oaks's Brief at 14-15.

We need not address this issue in detail because the record establishes that Oaks had notice, prior to the first trial, of Corporal Kostok's opinion that a left steering input caused Oaks's vehicle to enter a "critical speed yaw."[9] Specifically, Oaks's trial counsel attached copies of the corporal's January 2019 supplemental report to a brief in support of a motion *in limine*. **See**

_____

was convicted of REAP and summary offenses at the first trial, we will review these issues.

[9] Unlike our civil rules of procedure, no criminal rule of procedure expressly requires an expert to limit his testimony to the "fair scope" of an expert report. **See Commonwealth v. Roles**, 116 A.3d 122, 131 (Pa. Super. 2015). Pennsylvania Rule of Criminal Procedure 573, which relates to discovery, only requires the Commonwealth to disclose the results of expert opinions. **See id**.; **see also** Pa.R.Crim.P. 573(B)(1)(e). Despite the absence of an express rule limiting expert testimony to the fair scope of his report, "it cannot be asserted that either the Commonwealth or a defendant has *carte blanche* to allow an expert to testify beyond the information contained in his or her report." **Roles**, 116 A.3d at 131. Accordingly, we review a trial court's determination of whether a discovery violation occurred, and the appropriate remedy for a violation, for an abuse of discretion. **See Commonwealth v. Mendez**, 74 A.3d 256, 260 (Pa. Super. 2013). Moreover, we may affirm on different grounds than those stated by the trial court. **See Commonwealth v. Lehman**, 275 A.3d 513, 520 n.5 (Pa. Super. 2022) (stating it is well-settled where the result is correct, we may affirm a lower court's decision on any ground).

- 7 -

Oaks's Brief In Support Of Motion *In Limine*, 6/15/20, Ex. E. The January 2019 supplemental report specifically included the corporal's discussion of an "inappropriate steering input." **Id.**, Ex. E, at 7 (stating, *inter alia*, "The only way a vehicle gets into a critical speed yaw is through application of an inappropriate steering input"). Thus, the record belies Oaks's claims of a discovery violation based on a lack of notice of Corporal Kostok's intended testimony about a steering input, and this issue merits no relief.

In his second issue, Oaks asserts that the trial court erred in denying his motion for judgment of acquittal on the remaining charges of homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter **at the first trial**. See Oaks's Brief at 15-17. We decline to address this issue. As this Court stated in **Commonwealth v. Tolbert**, 670 A.2d 1172 (Pa. Super. 1995), once a defendant has been found guilty following retrial, this Court will not grant relief on the basis of the insufficiency of the evidence at the first trial. **See Tolbert**, 670 A.2d at 1185. As **Tolbert** explained, "Our task is to evaluate the procedure and substance of the **second trial**." **Id**. (emphasis added).

Even if Oaks could challenge the sufficiency of the evidence of the remaining charges of homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter based on the Commonwealth's case at the first trial, we would conclude Oaks did not preserve this issue for review. Oaks baldly asserts that the evidence at the first trial was insufficient to prove causation. **See** Oaks's Brief at 16. Although Oaks cites the transcript of the first trial,

those citations only refer to his trial counsel's arguments in support of the motion for judgment of acquittal. *See id*. at 15-16. Absent any additional legal or record-based arguments, with appropriate citations, this issue is waived. *See* Pa.R.A.P. 2119(a); *see also Commonwealth v. Cannavo*, 199 A.3d 1282, 1289 (Pa. Super. 2018) (stating that this Court will "not develop an argument for an appellant, nor . . . scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived") (internal citations and quotation marks omitted). Accordingly, no relief is due on Oaks's second issue.

Oaks's third issue challenges the trial court's denial of his motion to dismiss, based on double jeopardy and collateral estoppel principles, the remaining charges for homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter before the second trial. This issue implicates questions of law over which our standard of review is *de novo*, and our scope of review is plenary. *See Commonwealth v. Brockington-Winchester*, 205 A.3d 1279, 1283-84 (Pa. Super. 2019); *Commonwealth v. Jones*, 166 A.3d 349, 351 (Pa. Super. 2017).[10]

_____

[10] The trial court suggested that Oaks waived this issue by failing to object to the grant of a mistrial at the first trial and by failing to include a copy of the hearing on his motion to dismiss. However, we do not find waiver. As this Court has stated, "mere acquiescence to the *sua sponte* grant of a mistrial by the trial judge is not sufficient to waive his double jeopardy claims." *Commonwealth v. Kennedy*, 218 A.3d 420, 424 (Pa. Super. 2019). Moreover, while we disapprove of Oaks's failure to include a transcript of the hearing on his motion to dismiss, the absence of the transcript does not preclude meaningful appellate review of the legal issues raised in this challenge.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after an acquittal, a second prosecution for the same offense after a conviction[,] and multiple punishments for the same offense." *Commonwealth v. Young*, 35 A.3d 54, 59 (Pa. Super. 2011) (internal citation and quotation marks omitted). A frequent consideration in a double jeopardy analysis is whether offenses constitute greater- and lesser-included offenses, which, in turn, requires a comparison of the elements of the offenses at issue to determine whether each offense requires proof that the other does not. *See Commonwealth v. Buffington*, 828 A.2d 1024, 1029, 1031-32 (Pa. 2003). A "mere overlap in proof between the two prosecutions does not establish a double jeopardy violation." *Young*, 35 A.3d at 61.

"It is well settled, however, that a defendant may be retried, without violating double jeopardy principles, after a first trial yields a deadlocked jury." *Buffington*, 828 A.2d at 1029 (internal citation omitted); *see also Commonwealth v. McCane*, 539 A.2d 340, 344 (Pa. 1988) (noting that "[a] mistrial because a jury is unable to reach a verdict is the classic case where double jeopardy considerations do not prevent a retrial") (internal citation omitted). Double jeopardy, however, also "encompasses elements of issue preclusion (or collateral estoppel), under which a jury's verdict may, in certain circumstances, be viewed as a finding that forecloses consideration of an issue or fact in a subsequent prosecution." *Id*. at 1032. Therefore, "[i]f the verdict [at the first trial] must have been based on resolution of an issue in a manner favorable to the defendant with respect to a remaining charge, the

Commonwealth is precluded from attempting to relitigate that issue in an effort to resolve it in a contrary way." ***Brockington-Winchester***, 205 A.3d at 1284.

Oaks's double jeopardy argument has two parts. First, he asserts that the remaining charges for homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter, are greater-included offenses of REAP and reckless driving, for which the jury convicted him at the first trial. ***See*** Oaks's Brief at 19-20. Oaks cites ***Matter of Huff***, 582 A.2d 1093 (Pa. Super. 1990), to contend that reckless driving is a lesser-included offense of homicide by vehicle, and ***Commonwealth v. Tipton***, 578 A.2d 964 (Pa. Super. 1990), to assert REAP is a lesser-included offense of involuntary manslaughter. ***See id***. at 19. Oaks adds that the trial court's merger of the sentences for REAP into the sentences for homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter following the second trial support his argument that the second trial involved greater-included offenses such that double jeopardy barred retrial of the remaining charges. ***See id***. at 20-21.[11]

---

[11] Although not set forth by Oaks, we note the statutory definitions of the pertinent offenses. The jury at the first trial convicted Oaks of REAP and reckless driving, which are defined as follows:

- A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705.

*(Footnote Continued Next Page)*

Second, Oaks cites **Commonwealth v. States**, 938 A.2d 1016 (Pa. 2007), as support for his claim that his convictions at the first trial constituted a final determination of recklessness. **See id**. at 19-20. He also cites **States** to claim that the trial court's acquittal on the charge of disobedience to traffic control devices at the first trial should have precluded the Commonwealth

---

- Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving. 75 Pa.C.S.A. § 3736(a).

Oaks sought to dismiss the remaining charges of homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter, which are defined as follows:

- Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death. 75 Pa.C.S.A. § 3732(a).

- Any person who recklessly or with gross negligence causes serious bodily injury to another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic, except section 3802 (relating to driving under influence of alcohol or controlled substance), is guilty of aggravated assault by vehicle, a felony of the third degree when the violation is the cause of the injury. 75 Pa.C.S.A. § 3732.1(a).

- A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person. 18 Pa.C.S.A. § 2504(a).

from presenting evidence that he failed to obey a posted speed limit sign. *See*

*id*. at 20.

Oaks's arguments implicate the collateral estoppel, or more specifically

the "implied acquittal" doctrine,[12] which is embodied in Pa.R.Crim.P. 648(D).

Rule 648(D) states, in relevant part:

> (D) If there are two or more counts in the information. . ., the jury
> may report a verdict or verdicts with respect to those counts upon
> which it has agreed, and the judge shall receive and record all
> such verdicts.  If the jury cannot agree with respect to all the
> counts in the information . . .  *if those counts to which it has
> agreed operate as an acquittal of lesser or greater included
> offenses to which they cannot agree, these latter counts
> shall be dismissed*.  When the counts in the information . . .
> upon which the jury cannot agree are not included offenses of the
> counts in the information . . .  upon which it has agreed, the
> defendant or defendants may be retried on those counts in the
> information . . ..

Pa.R.Crim.P. 648(D) (emphasis added).

In **Buffington**, a jury acquitted the defendant of rape and involuntary

deviate sexual intercourse but deadlocked on a count of sexual assault.  **See**

**Buffington**, 828 A.2d at 1025.  After the trial court granted the defendant's

motion for judgment of acquittal on the remaining offense of sexual assault,

---

[12] This doctrine more frequently appears when the finder of fact remained silent on a greater offense and convicted the defendant on a lesser offense, and the defendant successfully appeals the conviction on the lesser offense. *Cf*. **Commonwealth v. Ball**, 146 A.3d 755, 765 (Pa. 2016) (discussing **Green v. United States**, 355 U.S. 184 (1957), and holding that a conviction by a magisterial district judge on a lesser included offense of driving under suspension operated an acquittal on the greater included offense of driving under suspension while driving under the influence and precluded the Commonwealth from reinstating the latter offense after the defendant sought a trial *de novo*).

this Court reversed, and our Supreme Court granted allowance of appeal to address "the principles reflected in Rule 648(D)" which codifies collateral estoppel considerations, but does not change the substantive law. *See id*. at 1027-29.

The *Buffington* Court concluded that sexual assault constituted a lesser-included offense of the charges on which the defendant was acquitted. *See id*. at 1031-32. The Court proceeded to reason that "[t]he conclusion that lesser (or necessarily) included offenses were involved, however, does not aid [the defendant] as a matter of elemental double jeopardy analysis, since, as . . . the general rule is that acquittal of a greater offense does not bar retrial on lesser included offenses as to which the jury was charged but unable to render a verdict." *Id*. at 1032 (internal citation omitted). The Court then engaged in a collateral estoppel analysis and concluded that "[c]onsistent with the acquittals on the rape and involuntary deviate sexual intercourse charges, various jurors may have nevertheless maintained the view that [the defendant] visited non-consensual sexual intercourse on [the victim], albeit without forcible compulsion and at a time during which [the victim] was conscious and aware." *Id*. at 1033. Accordingly, the Court concluded that the acquittals on the greater offenses of rape and involuntary deviate sexual intercourse did not bar retrial for sexual assault. *See id*.

In *Jones*, a jury found the defendant guilty of, *inter alia*, REAP, but deadlocked on aggravated assault and attempted murder charges. *See Jones*, 166 A.3d at 351. The trial court denied the defendant's motion to

- 14 -

dismiss the aggravated assault and attempted murder charges on double jeopardy principles. *See id*. This Court affirmed concluding that

> [t]he REAP conviction . . . d[id] not operate as an acquittal with respect to aggravated assault and attempted murder. While the aggravated assault and attempted murder statutes contain the word "reckless," these statutes also contain elements not present in the definition of REAP, upon which the jury could not reach a conclusion."

*Jones*, 166 A.3d at 353 (some capitalization omitted).

Following our review, we conclude the analyses in *Buffington* and *Jones* support the trial court's decision to reject Oaks's assertion that the REAP and reckless driving convictions at the first trial precluded retrial of the remaining charges of homicide by vehicle, aggravated assault by vehicle, and involuntary manslaughter. As *Buffington* noted, albeit in the context of an acquittal of greater-included offense, the identification of the offenses as being greater and lesser included is not necessarily dispositive of a double jeopardy analysis in the context of retrial. *See Buffington*, 828 A.2d at 1032. As in *Buffington*, the general rule is that "[a] mistrial because a jury is unable to reach a verdict is the classic case where double jeopardy considerations do not prevent a retrial." *See McCane*, 539 A.2d at 344 (holding that a finding of guilt on driving under the influence did not bar retrial on homicide by vehicle while driving under the influence where the jury was unable to reach a verdict on the latter offense). Further, to paraphrase *Jones*, the remaining charges contained elements not present in REAP and reckless driving, namely, that Oaks caused the death of Hawk and serious bodily injury to Sam Pearce, Cody

Pearce, and McDivitt, on which the first jury could not reach a conclusion. *See*

*Jones*, 166 A.3d at 353.[13]  Accordingly, Oaks has not established a basis to

conclude findings of guilt on REAP and reckless driving at the first trial

operated as an acquittal of the remaining charges of homicide by vehicle,

aggravated assault by vehicle, and involuntary manslaughter.

To the extent Oaks relies on *States* to support a collateral estoppel

argument, we conclude that case is clearly distinguishable.  In *States*, the

Commonwealth charged the defendant with numerous offenses related to a

motor vehicle crash, including homicide by vehicle and accident involving

death.  *See States*, 938 A.2d at 1018.  The trial court granted a motion to

sever a charge of accidents involving death while not properly licensed for a

decision by the trial court.  *See id*.  After the jury deadlocked, the trial court

separately acquitted the defendant of the accidents involving death, stating it

was not convinced beyond a reasonable doubt that the defendant had been

driving.  *See id*. at 1019.[14]  Our Supreme Court concluded that the trial court's

acquittal conclusively determined that the defendant was not driving the car,

_____

[13] The reasoning in *Jones* mirrors our Court's decision in *Commonwealth v. Harris*, 582 A.2d 1319 (Pa. Super. 1990), where we concluded that a finding of guilt on simple assault did not bar retrial on a charge of aggravated assault. *See Harris*, 582 A.2d at 1323.

[14] The *States* Court noted that while the trial court expressly stated its finding in support of acquittal, an express finding was not necessary to its analysis because the record established the only basis for the acquittal was whether the defendant had been driving.  *See States*, 938 A.2d at 1022 n.7.

such that reprosecution of the remaining offenses (which would require proof the defendant was driving) would violate double jeopardy. *See id*. at 1027.

In contrast to *States*, nothing in the record in the present case supports a similar conclusion the guilty verdicts by the jury or the trial court, or the trial court's acquittal on disobedience to traffic control devices, at the first trial constituted a determination of a material fact *favorable* to Oaks on the remaining charges. Indeed, Oaks's assertion that the acquittal on disobedience to traffic control devices constitutes a finding that he was not driving over the speed limit not only contradicts the trial court's stated reasons for the acquittal, *see* Trial Court Opinion, 2/22/24, at 20 (explaining the court acquitted Oaks on that charge because there was no evidence a uniformed official placed or held the traffic control device), but also disregards his own evidence that he was travelling at least twice the speed limit. *See* N.T. Second Trial, 8/26/22, at 113 (indicating Mazza, the defense expert, opined Oak had been driving seventy-one miles per hour when his vehicle yawed). Accordingly, *States* does not support Oaks's claim.

In sum, we conclude that Oaks has not demonstrated error in the trial court's decision to deny his motion to dismiss the remaining charges before the second trial. Thus, Oaks's third issue merits no relief.

In his fourth issue, Oaks contends the evidence at the second trial was insufficient to prove he caused Hawk's death.

As this Court has stated:

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Sanders*, 259 A.3d 524, 528 (Pa. Super. 2021) (*en banc*) (internal citations, quotation marks, and brackets omitted).

"To establish criminal causation, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability." *Commonwealth v. Nunn*, 947 A.2d 756, 760 (Pa. Super. 2008) (internal citation omitted). We employ "a two-part test for determining criminal causation[:]"

First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. A victim's death cannot be entirely attributable to other factors; rather, there must exist a causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place. Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible.

*Id*. (internal citations and quotation marks omitted). "[T]he defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection." *Id*. (internal citation omitted).

In the context of homicide by vehicle, the Commonwealth must prove that a violation of a law governing the operation of a motor vehicle (other than driving under the influence) caused the victim's death. *See* 75 Pa.C.S.A. § 3732(a); *Sanders*, 259 A.3d at 529. In the context of involuntary manslaughter, the Commonwealth must prove the defendant's conduct caused the victim's death. *See* 18 Pa.C.S.A. § 2504(a); *Commonwealth v. Fabian*, 60 A.3d 146, 151 (Pa. Super. 2013).

Oaks argues that there was no evidence that his actions had a direct causal relationship to Hawk's suffering fatal blunt force trauma. *See* Oaks's Brief at 23. He contends that "there was *no* testimony that [he] ever entered a left-hand steering input that caused him to lose control." *Id*. Put differently, Oaks argues that the evidence was insufficient to prove causation without evidence he steered left.

The trial court rejected this issue and reasoned that "[Oaks's] conduct of rapidly accelerating, dramatic rate of speed in a residential [area] and resulting inability to control the Subaru was directly and substantially linked to the actual results, as to give rise to the imposition of criminal liability." Trial Court Opinion, 2/22/24, at 17-18. The trial court observed that the jury at the second trial was free to reject Oaks's evidence that a mechanical failure had occurred before he lost control of his vehicle and accept the Commonwealth's expert evidence that the "extremely excessive speed and [Oaks's] driving caused the loss of control and was the cause of" the collision into the pickup truck that killed Hawk. *Id*. at 16-17.

Our review of the record reveals sufficient evidence that Oaks's conduct was an antecedent, but for which Hawk's death would not have occurred, and that Hawk's death was not so extraordinarily remote or attenuated that it would be unfair to hold him criminally responsible. Corporal Kostok, who had been qualified as an expert in accident reconstruction, opined that Oaks had been traveling at a high rate of speed, "[t]here was an inappropriate steering input that cause the vehicle to go into a counterclockwise yaw," which caused Oaks's vehicle to spin and strike the pickup truck. N.T. Second Trial, 8/25/22, at 236-38. Corporal Kostok explained the different ways a car could get into a yaw, which included (1) going too fast around a curve; (2) inattentiveness resulting in a jerking of the steering wheel; (3) an "avoidance maneuver;" (4) changing "frictional values" that causes a driver to yank the steering wheel; or (5) having the wheel turned when accelerating from a stop. *Id*. at 147-48. Moreover, Corporal Kostok opined that had Oaks been going less than sixty miles per hour, his vehicle would not have collided with the pickup truck or the home. *See id*. at 229-30. This testimony, when read in a light most favorable to the Commonwealth, establishes that Oaks must have entered an "inappropriate steering input," which caused his vehicle to yaw, and given the excessive speed Oaks was driving at the time, caused the impact with the pickup truck that killed Hawk. Thus, the evidence was sufficient to prove that Oaks's violation of a law governing the operation of a motor vehicle caused the death of Hawk to sustain his convictions for homicide by vehicle and

involuntary manslaughter. **See Sanders**, 259 A.3d at 530; **cf**. **Fabian**, 60 A.3d at 152.

In his final issue, Oaks asserts that the evidence was insufficient to sustain his convictions for aggravated assault by vehicle because Cody Pearce, Sam Pearce, and McDivitt did not suffer serious bodily injury.

The Vehicle Code defines bodily injury as an "[i]mpairment of physical condition or substantial pain" and serious bodily injury as "[a]ny bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." 75 Pa.C.S.A. § 102. "Serious bodily injury encompasses varying degrees of injury." **See Commonwealth v. Grays**, 167 A.3d 793, 808 (Pa. Super. 2017).

Oaks outlines cases where evidence was held sufficient to sustain a finding of serious bodily injury, from which he extrapolates that bone dislocations and fracture, and concussions, which did not result in further medical complications did not qualify as "serious." **See** Oaks's Brief at 27-29. He asserts Cody Pearce, Sam Pearce, and McDivitt suffered injuries more akin to a broken nose, which our Supreme Court deemed insufficient to sustain a finding of serious bodily injury, than to injuries requiring extended hospital stays, resulting in emergency surgical intervention to prevent death or medical complications, and which resulted in loss of function for months. **See id**. at 29.

We agree with the trial court and find no merit to this issue. As the trial court noted, Cody Pearce suffered a clavicle fracture, a concussion, and a fracture of the occipital condyle, a bony prominence near the attachment of the skull to the neck. *See* N.T. Second Trial, 8/24/22, at 20. He had to wear a neck brace and a sling for his arm for six to eight weeks. *See id*. at 22. Samuel Pearce suffered grade one laceration to his spleen, a contusion to his kidney, a fibula fracture, and a concussion. *See id*. at 27. He was placed on lifting or physical restrictions for at least two months and the estimated recovery time for the broken fibula was about six weeks. *See id*. at 30. McDivitt suffered a laceration to his spleen, a left clavicle fracture, a dislocated right shoulder, a chipped tooth and a concussion. *See id*. at 31. He was placed on limited activity for approximately six weeks for recovery, and he was required to wear slings. *See id*. at 34.

Moreover, Cody Pearce did not return to work for five to seven months, and he continued to suffer pain and memory problems at the second trial. *See* N.T. Second Trial, 8/25/22, at 71-79. Sam Pearce did not return to work for six weeks after the crash, aggravated a back injury which required surgery, and he continued to feel pain in his back and numbness in his foot. *See* N.T. Second Trial, 8/24/22, at 98, 244-47. McDivitt required follow-up care for approximately five months, had both of his arms slung for months, continued to suffered headaches, anxiety, and memory issues up until trial, and stated he still needed surgery on his shoulders but did not want to take time off of work. *See* N.T. Second Trial, 8/25/22, at 47-52.

Following our review, we conclude there was sufficient evidence that Cody Pearce, Sam Pearce, and McDivitt suffered protracted impairments of bodily functions and organs to sustain the jury's findings that they suffered serious bodily injury. *Cf. Commonwealth v. Santiago*, 294 A.3d 482, 486 (Pa. Super. 2023) (noting that a concussion which resulted in two missed weeks of work and continuing effects for a month constituted serious bodily injury for the purpose of aggravated assault); *accord Commonwealth v. Baboolal*, 324 A.3d 1238, 2024 WL 3440444 (Pa. Super. 2024) (non-precedential mem. decision at *9) (noting that that the definition of serious bodily injury in the Vehicle Code and Crimes Code are the same). Thus, Oaks's final issue merits no relief.

Judgment of sentence affirmed.

President Judge Emeritus Stevens joins in this decision.

Judge Bowes concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/6/2025